**ENGLANDER MOTORS, INC., Appellant,**

v.

**FORD MOTOR COMPANY, Appellee.**

**No. 13567.**

United States Court of Appeals
Sixth Circuit.

May 26, 1959.

Myron N. Krotinger, Mendelsohn, Krotinger & Lane, Cleveland, Ohio (M. Alfred Roemisch, Herbert A. Rosenthal, Cleveland, Ohio, on the brief), for appellant.

Charles W. Sellers, Thompson, Hine & Flory, Cleveland, Ohio (Andrew C. Hartzell, Jr., Cleveland, Ohio, on the brief), for appellees.

Before SIMONS and ALLEN, Circuit Judges, and KENT, District Judge.

SIMONS, Circuit Judge.

The appellant, hereinafter known as Englander, was at the time the contro-

versy arose, a franchise dealer selling Ford cars, replacement parts and accessories under written contract with the Ford Motor Company. It brought a private anti-trust action under Section 4 of the Clayton Act, 15 U.S.C.A. § 15 for alleged injuries to its business and property because of Ford's violation of Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act, 15 U.S.C.A. §§ 1, 2 and 14, charging that Ford by express or implied agreement with all of its dealers requires that they deal exclusively in Ford cars and Ford made or approved parts and accessories for such vehicles, complaining that the agreements gave Ford a monoply on a line of commerce in violation of Sec. 2 of the Sherman Act and that they are conditioned upon the dealers refraining from dealing in the goods of Ford's competitors, so as to substantially lessen competition contrary to Sec. 3 of the Clayton Act. It charges that the agreements constitute unreasonable restraint of trade in violation of Sec. 1 of the Sherman Act. It further charges that the agreements permit Ford to cancel its franchise arrangement with its dealers, including Englander, by giving sixty days notice of franchise cancellation, and that by the use of this provision, it can enforce anti-trust law violations by its dealers. The public is alleged to be injured because it must pay higher prices for parts and accessories purchased from Ford dealers since it is limited in obtaining such parts and accessories by Ford's power to fix prices for goods and services and because it can control the dealers' operations, including personnel, finances, stocks of goods and equipment. It charges that it was injured because defendant became dissatisfied with its performance with regard to the sale of parts and accessories and by threats of cancellation caused it to obtain leases for the benefit of others than itself and to sell its business to a designee of Ford. It further charges that the leases had a value in excess of rent and impliedly that the forced sale of its business was at less than real value.

In another cause of action, Englander seeks an accounting for moneys given to Ford by it and other Ford dealers for advertising purposes. Upon alternative motions for dismissal or to make more definite the statement as to the anti-trust action and for dismissal or severance as to the action for accounting, the district judge granted motions to dismiss, and Englander has appealed. The district court assuming, for the purpose of the claim for anti-trust relief, that the allegations of public injury are true in that manufacturers of competing Ford replacement parts are foreclosed from the market for their products by the Ford authorized dealer chain and that the general public cannot obtain without specific request these competing products through authorized Ford dealers, ruled that Englander must further show that he was injured through the operation of the system, and concluded Englander could not be so injured so that the case is not one for treble damages under the anti-trust law, nor is it one entitled to the jurisdiction of the court. Since the accounting action is not a true class action because the pleadings show that the interests of the members of the class are not undivided and it did not appear that Englander's share of that fund exceeds $3,000.00, therefore the trial court summarily granted the motions to dismiss.

■ Our first excursion into the allegations of the complaint is to determine if its allegations claim a violation of Sec. 3 of the Clayton Act, which provides that it shall be unlawful for any person engaged in commerce to make a contract for the sale of goods for resale within the United States on the condition, agreement, or understanding, that the purchaser shall not use or deal in the goods of a competitor where the effect of such contract for sale or such condition, agreement, or understanding, may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

It would seem clear from the terms of the agreement that it is conditioned upon

the dealers not dealing in competitors' goods. That is, however, limited to the selling of competing replacement parts in any place of business upon which the dealer displays the Ford Company's trademarks or tradename or any sign or indication that such place of business is that of an authorized Ford dealer or service station, except in cases where the company is unable to supply them or the purchaser has specifically requested the dealer to use some other part. The complaint is not clear that sales of unauthorized parts or accessories were made under such restricted conditions, or if so to what extent. This may only be determined by trial.

Accepting the court's assumption, it still remains to determine whether the allegations of the complaint show that competition may be substantially lessened. In Standard Oil Company of California et al v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 it was held that the requirement of Section 3 of the Clayton Act of a showing that the effect of contracts may be to substantially lessen competition was made by proof of exclusive dealing contracts covering gasoline, oil and automobile parts and accessories which bound independent dealers selling 6.7% of the market for gasoline in a 7-state area. To the same effect is United States v. Richfield Oil Corp., D.C., 99 F.Supp. 280, in respect to Section 3 of the Clayton Act and Section 1 of the Sherman Act. This case was affirmed per curiam on the basis of the Standard Oil case, 343 U.S. 922, 72 S.Ct. 665, 96 L.Ed. 1334. Dictograph Products v. Federal Trade Commission, 2 Cir., 217 F.2d 821, certiorari denied 349 U.S. 940, 75 S.Ct. 784, 99 L. Ed. 1268, and Anchor Serum Company v. Federal Trade Commission, 7 Cir., 217 F.2d 867, reached like conclusions. We, therefore, conclude that Englander has sufficiently alleged violation of Sec. 3 of the Clayton Act.

■ In Standard Oil Company of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, the rule of reason has been applied to the interpretation of the Sherman Act. It is Ford's contention that its restraints are reasonable as a matter of law because it has a good will and a guaranty to protect and that it must insure that its dealers would have sufficient resources to adequately promote Ford's products. It may well be that the proofs would fail to show that Ford's concern for its good will and the protection of its guaranties is soundly based but this may only be determined after proofs and not upon a motion to dismiss. Jurisdiction is determined by the allegations of the bill and usually if the bill or declaration makes a claim that if well founded is within the jurisdiction of the court, it is within that jurisdiction whether well founded or not. Hart v. B. F. Keith Vaudeville Exchange, opinion by Mr. Justice Holmes, 262 U.S. 271, 43 S.Ct. 540, 67 L.Ed. 977, and cases therein cited. While causes are often dismissed as frivolous, this is not that sort of case.

■ Section 2 of the Sherman Act makes it a misdemeanor to monopolize or attempt to monopolize any part of trade or commerce in the several States. Monopoly for the purpose of Sec. 2 has been determined to be the power to fix prices or to exclude competition. United States v. E. I. Du Pont De Nemours & Co., 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264. In order for a determination of the power to fix prices or to exclude competition, or attempts to do so, it is necessary to have the market area defined. Englander has alleged the market to be that encompassed by the commerce of Ford dealers. It is charged that Ford has such control of the operation of the dealers' business that it is able to fix prices on many specific products and services in commerce. While this charges a violation of Sec. 2, it is so broadly stated that we are unable to tell if Englander intends to prove that prices or competition has been unlawfully affected in all of the products or services in the dealers' commerce or only in some one or more of such products or services. Ford should be forewarned by the complaint and, if so, should have the op-

portunity for a more definite statement of claim under Rule 12(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A., if it deems itself prejudiced in preparing a defense to the monopoly charge.

■■ In order that Englander may have a cause of action under Section 4 of the Clayton Act, it must show that it was damaged in its business or property by a violation of the anti-trust laws. Englander contended that its damage was a result of Ford's use of the cancellation provision of the franchise and that this provision was a violation of law. There is nothing intrinsically wrong with a short notice cancellation provision unless by its exercise Ford was able to coerce violations, and by its use had forced Englander to sell its business. Moreover, in Standard Oil Company of New Jersey v. United States, supra, it was held that there is nothing intrinsically wrong with Standard owning stock in other corporations but if it owns such stock for the purpose of violating the anti-trust laws, ownership itself is a violation of such laws and by the same measure the use of a short term cancellation provision for the purpose of violating the law is itself a violation of the anti-trust law.

We conclude upon this phase of the case that it must be returned to the district court for answer and trial and for findings of fact in support of, or in conflict with the allegations. Fact issues will include findings that competition may or may not be substantially lessened because of the exclusive agreement and a conclusion as to whether Englander has brought itself within the scope of Standard Oil Company of California v. United States, supra, by the facts as found.

■ The suit for an accounting is brought as a class action. From the pleadings, however, it is evident that the interest of the alleged members of the class are not undivided and for purposes of jurisdiction they may not be cumulated. In order to come within the jurisdiction by an amount in controversy in diversity cases, jurisdiction is determined by the value of the individual claim apart from that of the other members of the class. Sturgeon v. Great Lakes Steel Corporation, 6 Cir., 143 F.2d 819. We remand this phase of the case to the trial court to allow Englander to amend its pleadings if it can show a jurisdictional interest in a unified fund. If the amended pleadings show that the plaintiff's individual interest exceeds the jurisdictional amount, there is jurisdiction. If not, this cause of action should be dismissed.

The decree is reversed and the cause remanded for trial consistent with this opinion.