PERINGTON WHOLESALE, INC.,
Plaintiff-Appellant,

v.

BURGER KING CORPORATION, Davmor Industries, Inc., and Carpenter Paper Co., Defendants-Appellees.

No. 77–1877.

United States Court of Appeals,
Tenth Circuit.

Argued March 13, 1979.

Decided Oct. 31, 1979.

Supplemental Opinion on Rehearing Jan. 14, 1980.

Rehearing Denied Feb. 20, 1980.

Martin Zerobnick, Denver, Colo. (Robert G. Weiss, Denver, Colo., with him on brief), of Brenman, Sobol, Baum, Zerobnick, Epstein, Zuckerman & Lutz, P. C., Denver, Colo., for plaintiff-appellant.

R. Brooke Jackson, Denver, Colo. (Harry L. Hobson, Denver, Colo. with him on brief), of Holland & Hart, Denver, Colo., for defendants-appellees, Burger King Corporation and Davmor Industries, Inc.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This appeal arises out of a private antitrust suit brought by Perington Wholesale, Inc. (Perington), against Burger King Corporation (Burger King), Davmor Industries, Inc. (Davmor), and Carpenter Paper Company (Carpenter). Among other claims, Perington asserts that defendants conspired to restrain trade and conspired or attempted to monopolize in violation of the Sherman Act, 15 U.S.C. §§ 1, 2, and utilized a tying arrangement in violation of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 14. Early in the proceedings the trial judge granted Carpenter's Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim against it, finding the complaint insufficiently alleged Carpenter's participation in a conspiracy. The judge later granted Burger King's and Davmor's Fed.R.Civ.P. 56(b) motion for partial summary judgment on the tying claims, and at the same time issued a final order dismissing the entire action, including any remaining Sherman and Clayton Act claims.[1]

Perington challenges on appeal the propriety of the judge's disposition of the federal antitrust contentions, arguing that its complaint sufficiently stated claims for relief,[2] and that summary judgment should not have been granted on the tying claims.

---

1. In this Final Order of Dismissal, filed August 23, 1977, in which the judge dismissed all other claims against those defendants, apparently on his own motion, express reference was made only to the monopoly claims, but we will treat the order as also a dismissal of the conspiracy claims against Burger King and Davmor under Fed.R.Civ.P. 12(b)(6).

2. Davmor and Burger King argue that the Fed. R.Civ.P. 12(b)(6) dismissal of the claims against Carpenter is not properly before this court, that order allegedly having become final before the trial court's final order of dismissal. Carpenter did not make an appearance in this appeal, although it was properly served with notice of appeal. We conclude Perington may challenge

The factual allegations in Perington's complaint, as amended, which we assume to be true for purposes of considering the propriety of the dismissal for failure to state recognizable claims, are as follows. Perington is engaged in the business of supplying food and nonfood products to restaurants in Colorado and Wyoming. Burger King both franchises and operates fast food restaurants in that trade area and elsewhere. Perington entered into a contract with Davmor by which Davmor agreed to sell "paper products, promotional items, condiments and frozen foods" to Perington for distribution and resale to Burger King restaurants that chose to deal with Perington. Davmor, a wholly-owned subsidiary of Burger King, operated a nationwide commissary system for supplying Burger King restaurants with goods meeting Burger King quality standards. Although Davmor supplied directly restaurants in many areas of the country, it was unable to do so in Colorado. Perington's services were therefore engaged to fill this void.

The agreement, as implemented by Davmor, required that any products bearing the Burger King trademark, service mark or private label (logoed products) sold by Perington be acquired from Davmor, which was the exclusive source of some logoed products and the prime, though not only, source of other such items. The agreement did not impose a similar requirement concerning nonlogoed products available from Davmor. The agreement was terminable by either party for any reason.

Thereafter, Perington bought from Davmor most of the logoed products it needed for resale, but filled its needs for logoed paper cups from a different supplier. This supplier, unnamed in the complaint, was

authorized by Burger King to market paper cups bearing the logo. These were known as "Solo" brand cups; Davmor supplied "Sweetheart" cups.

Notwithstanding a letter from Davmor calling to Perington's attention its breach of the exclusive supply provision, Perington continued to supply the restaurants with Solo brand cups, which it apparently acquired at a lower price than Davmor would sell Sweetheart cups. Davmor then cancelled the agreement, and Burger King wrote a letter to at least some of the restaurants notifying them that Perington had been terminated, giving reasons for the termination which Perington asserts were untrue and libelous. Thereafter, Carpenter became Davmor's new distributor for paper products. Due to the termination of the agreement, Perington was unable to sell any products to Burger King restaurants. (Copies of the agreement, the cancellation letter and the Burger King letter to some of its franchisees or outlets were attached to the complaint).

## I

### Sufficiency of Complaint to Withstand Motion to Dismiss

The essential function of a complaint under modern pleading is twofold—to give opposing parties fair notice of the basis of the claim against them so they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief. Thus, if an opposing party cannot formulate a responsive pleading because the factual allegations are too sparse, it is entitled to move for a more definite statement. Fed.

that order. In multiparty actions such as this, unless the trial judge expressly directs entry of a final judgment as to less than all the parties in accordance with the requirements of Fed.R. Civ.P. 54(b), the order does not become final until entry of judgment adjudicating all the claims, rights and liabilities of all the parties. *Golden Villa Spa, Inc. v. Health Industries, Inc.,* 549 F.2d 1363, 1364 (10th Cir. 1977); *Pipeliner's Local Union No. 798 v. Ellerd,* 503 F.2d 1193, 1199 (10th Cir. 1974). Since the trial judge did not make such an entry, the order

was not final until the final order of dismissal from which Perington appeals. An appeal from a final judgment draws into question all nonfinal orders preceding it. *Herron v. Rozelle,* 480 F.2d 282, 285 (10th Cir. 1973); 9 Moore's Federal Practice ¶ 203.18 (2d ed. 1975). The notice of appeal was not misleading and the docketing statement filed according to Tenth Cir. R. 8 fairly apprised the parties, including Carpenter, of the issues to be argued. Therefore, we conclude the questioned matters are properly before this court.

R.Civ.P. 12(e). On the other hand, the trial court must conclude "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" before the pleadings can be dismissed under Rule 12(b)(6). *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. Sufficiency to Give Fair Notice of Basis of Claim

Perington's original complaint made the conspiracy assertion in the following language: "Plaintiff is informed and believes, and upon information and belief alleges that defendants conspired to cancel [the agreement]." Davmor and Burger King answered, but Carpenter filed a Rule 12(b)(6) motion to dismiss, arguing that the allegation of its participation in the conspiracy was conclusory and therefore insufficient to state a claim for relief. The trial judge granted Carpenter's motion and gave Perington twenty days to amend the complaint in order to properly allege Carpenter's participation.

The amended complaint, filed on July 18, 1975, contained an additional count, asserted "against Carpenter Paper Company, only." Perington's allegations in that count, again asserted upon information and belief, essentially restated the allegation of the original complaint; no substance was added.[3]

The trial judge then granted Carpenter's renewed motion to dismiss on the ground that

> [t]he Amendment to the Complaint does not specify in any manner the facts with respect to Carpenter's conduct which would make it a part of that conspiracy or combination.

> . . . . . .

The Court also observes that this action has been pending since November 26, 1974, when the Complaint was filed; that the granting of the Motion to Dismiss previously provided for an amendment;

that the plaintiff has had an adequate opportunity to develop the facts, if there are any facts, to establish liability of this defendant, and has failed to do so.

In this case it cannot be said that defendants did not have fair notice of Perington's claims, or that beyond doubt the plaintiff would be unable to prove the claim of conspiracy. The conduct complained of—termination of the distributorship—is adequately specified, and the allegation of conspiracy related to that conduct. Nothing in the complaint negates the claim of conspiracy. Whether the allegation is called conclusory, as it is, or factual, as it is also, is not determinative. *United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954).

■ Moreover, pleading on "information and belief" in appropriate circumstances fits well with the spirit of the rules. We agree with *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404 (7th Cir. 1945), which reasoned that although the Rules do not specifically provide for such pleading,

> Rule 8(f) states that "All pleadings shall be so construed as to do substantial justice"; consequently to refuse to give credence to them on defendants' motion to dismiss would be opposed to the spirit of the Rules. Furthermore, Rule 11 provides that the signature of an attorney to the pleading is a certificate that "to the best of his knowledge, information, and belief" there appears to be good ground to support the pleading; so the concept of "information and belief" is recognized under the Rules, and there appears to be no good reason why such pleading is not permissible, as in the instant case, where the matters are peculiarly within the knowledge of the defendants.

149 F.2d at 406. *Cf. Bertucelli v. Carreras*, 467 F.2d 214, 215 n.4 (9th Cir. 1972) (information was not peculiarly within the knowledge of defendants). *See* 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil

---

**3.** Because we have concluded that the amendment added nothing to the original complaint, we need not deal with Davmor's and Burger King's contention that the additional count's reference to Carpenter "only" somehow requires a different result concerning the allegations against them.

§ 1224 (1969). In antitrust actions such as this, "where the proof is in the hands of the alleged conspirators," *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), allowing such pleading when the conduct complained of is otherwise fairly noticed seems appropriate. As noted by the Supreme Court in *Conley*, which involved an assertion that specific facts must be pleaded,

> [A]ll the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures· established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive of the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

355 U.S. at 47–48, 78 S.Ct. at 103 (footnotes omitted). Therefore, we hold the allegations gave fair notice of the basis of the claim sufficient to withstand the motion to dismiss.[4]

4. Defendants would make much of the fact that Perington conducted no discovery, although it allegedly had ample opportunity to develop facts to show in detail the nature of the alleged violations. While we do not condone Perington's dilatory conduct of the litigation, we cannot agree that failure to discover, when the complaint is otherwise adequate, justifies dismissal for failure to state a claim for relief. If a party has had ample opportunity to discover,

### B. Sufficiency to Show Legal Right to Relief

Perington pleaded that defendants conspired to terminate the agreement and replace Perington with Carpenter, and that the arrangement as enforced resulted in a substantial lessening of competition in the market for logoed cups, restrained trade, and conspired or attempted to monopolize the right to supply Burger King franchises. Sections 1 and 2 of the Sherman Act and sections 2 and 3 of the Clayton Act, as well as the Colorado antitrust law, were cited without labeling particular acts as violations of specific sections. It is not necessary, of course, that the particular theory or law under which recovery is sought be pleaded, nor are the dimensions of a lawsuit determined by the pleadings. *Misco Leasing, Inc. v. Keller*, 490 F.2d 545, 548 (10th Cir. 1974). But the complaint must allege facts sufficient, if they are proved, to allow the court to conclude that claimant has a legal right to relief. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The question, therefore, is whether the facts alleged would support a right to relief cognizable under the statutes invoked by Perington.

### 1. Section 1 of the Sherman Act

■ Section 1 of the Sherman Act, 15 U.S.C. § 1, does not necessarily prohibit a conspiracy to substitute a new distributor for an existing one. *E. g., Craig v. Sun Oil Co.*, 515 F.2d 221 (10th Cir. 1975), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976). Competition, the ward of the Sherman Act, may not suffer by such a substitution, and may in fact be enhanced. *See Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211, 1214–15 (9th Cir. 1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219

yet has not, the opposing party may move for summary judgment under Rule 56 and thereby put the claimant to its proof on the merits. *Natrona Service, Inc. v. Continental Oil Co.*, 598 F.2d 1294 (10th Cir. 1979). *See also First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Modern Home Inst., Inc. v. Hartford Accident & Indem. Co.*, 513 F.2d 102 (2d Cir. 1975).

(1971). If, however, the substitution is motivated by a desire to damage Perington or put it out of business, or the result is to substantially lessen competition, the Sherman Act is violated. *See Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71 (9th Cir. 1969), *cert. denied*, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); *Walker Distrib. Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1 (9th Cir. 1963), *cert. denied*, 385 U.S. 976, 87 S.Ct. 507, 17 L.Ed.2d 438 (1966); *Ace Beer Distributors, Inc. v. Kohn, Inc.*, 318 F.2d 283 (6th Cir.), *cert. denied*, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963); *Englander Motors, Inc. v. Ford Motor Co.*, 267 F.2d 11 (6th Cir. 1959).

The original complaint asserts a conspiracy to cancel the agreement, and because of the cancellation Perington was unable to sell to Burger King franchisees and outlets. The amended complaint recites the conspiracy to terminate, and that the "purpose and intended effect was to restrain and prevent further activity" by Perington in the relevant market, and the activity was "an attempt to monopolize the right to supply Burger King franchises and retail stores." But it also asserts Davmor demanded that Perington buy Sweetheart paper cups, from it, instead of the Solo brand cups it was acquiring elsewhere, and that the reason for cancelling the agreement was Perington's refusal to comply with that demand.

We do not construe the complaint to allege a primary motivation to damage Perington, or to put it out of business as a competitor of Carpenter or Davmor. Rather, the reasonable construction is that the termination was motivated by Davmor's desire to increase its share of the relevant market for paper cups. So viewed, the complaint must stand or fall upon whether there are factual allegations that if proved tend to show an actual lessening of competition, a restraint of trade.

The complaint describes an exclusive supply agreement which was cancelled for allegedly anticompetitive motives. An exclusive supply agreement entails a commitment by a buyer to deal only with a particular seller. A requirements contract is functionally the same if it commits the buyer to acquire all the products it needs from the seller. L. Sullivan, Handbook of the Law of Antitrust § 163 (1977). The agreement need not specifically require the buyer to forego other supply sources if the practical effect is the same. *Cf. United Shoe Mach. Corp. v. United States*, 258 U.S. 451, 457, 42 S.Ct. 363, 66 L.Ed. 708 (1922) (Clayton Act, section 3 case). The antitrust vice of these arrangements is the foreclosure of part of the market in which the seller competes by taking away the freedom of the buyer to choose from the products of competing traders in the seller's market. *See United States v. Columbia Steel Co.*, 334 U.S. 495, 524, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948). Because these arrangements may actually enhance competition, however, they are not deemed per se illegal. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 333, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961). Thus, a complaining trader must allege and prove that a particular arrangement unreasonably restricts the opportunities of the seller's competitors to market their product. *United States v. Columbia Steel Co.*, 334 U.S. 495, 524, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948). The actual dollar amount of the total trade is not important in these dealership cases, rather it is the nature and tendency of the agreement. *Perryton Wholesale, Inc. v. Pioneer Distrib. Co.*, 353 F.2d 618, 622 (10th Cir. 1965); *New Home Appliance Center, Inc. v. Thompson*, 250 F.2d 881, 884 (10th Cir. 1957).

A problem with the instant complaint is that while it asserts Perington was foreclosed from selling apparently anything, including Solo cups, to Burger King restaurants, the wholesale agreement attached to the complaint expressly states that it is nonexclusive and that "no franchisee of Burger King corporation is required to purchase any item whatsoever from Wholesaler." Further, Perington's complaint alleges Burger King gave "untrue, unjustified and libelous *per se* " reasons to its restaurants for the cancellation.

The competition being lessened by the defendants' actions, if any, must be in the paper cup market, or perhaps in all supplies of which Davmor was not the sole licensee

under the Burger King logo policy. Thus, if the restaurants are free to purchase from any wholesaler there is no lessening of competition cognizable under the antitrust laws, although Perington may have a tort claim for libel.

We read these complaints liberally, however, as indicated in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Despite the tort allegation, a reasonable inference from the complaint, as amplified by its exhibits, is that the trade practice, if not a tacit requirement imposed by Burger King and/or Davmor, is that all Burger King outlets and franchisees buy all their logoed supplies from only one supplier, *i. e.* one in the position Perington occupied. The Burger King letter (Exhibit C) supports that inference by stating "Even though some of you had expressed no reason or desire to change purveyors . . . I hope that you realize that this decision was made because Carpenter Paper Company will give better service and prices than you are experiencing with Perington." Thus, if coercion is exercised by Davmor and Burger King to freeze out other suppliers, then there could be a substantial lessening of competition in the market for supplying the restaurants. But if the restaurant managers are free to deal with Perington and others, on all items not available exclusively through Davmor, then there would not be a lessening of competition in violation of the antitrust laws.

We hold the complaint states a cause of action under section 1 of the Sherman Act. Perhaps Burger King, or its subsidiary Davmor, could supply all logoed paper cups and other items to its outlets and franchisees without violation of the antitrust laws. But once independent businesses are employed in its distribution structure, it cannot accede to the demands of one competitor-distributor to lessen competition in that entity's market. *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). If Carpenter is a knowing participant in an exclusive dealing

contract having that effect, it would be liable. The fact Perington had itself signed such an agreement would not preclude it from suing on the antitrust violation. *See Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

### 2. Section 3 of the Clayton Act[5]

■ Section 3 of the Clayton Act, 15 U.S.C. § 14, prohibits an exclusive dealing arrangement when its effect "may be to substantially lessen competition or tend to create a monopoly in any line of commerce." Section 3 is designed to catch in its net those arrangements that if left unchecked *probably* would blossom into actual restraints violating section 1 of the Sherman Act. *Standard Fashion Co. v. Magrane-Houston Co.*, 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653 (1922). To prove a violation of section 3, a plaintiff must show the exclusive dealing arrangement has or probably will foreclose competition in a substantial share of a line of commerce. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *Standard Oil Co. v. United States*, 337 U.S. 293, 314, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949).

Thus the same analysis discussed above in connection with section 1 of Sherman Act supports a claim under section 3 of the Clayton Act. Perington's allegations, liberally construed, correspond with the requirements established by the Supreme Court in *Tampa Electric* for proving a section 3 case. *See* 365 U.S. at 327–35, 81 S.Ct. 623. The line of commerce—the market for supplying Burger King logoed cups—is identified; the relevant market area of effective competition is suggested to be Wyoming and Colorado; a substantial share of the competition in that market was or probably would be foreclosed if the Burger King restaurants are required to buy only Davmor's products. We cannot conclude that without doubt Perington would be unable to prove a section 3 violation against the three defendants.

---

**5.** Even though Perington's complaint pursued only the theory of a tying arrangement violating this statute, we must examine the complaint to determine if the allegations support

relief on any possible theory. *See Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967); 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1357 (1969).

### 3. Section 2 of the Sherman Act

#### a. Attempt to Monopolize

■ In its complaint, as amended, Perington asserts that defendants attempted to monopolize the "right to supply Burger King franchises and retail stores," in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. We interpret this to mean an attempt to monopolize the market for all items—food and nonfood, logoed and nonlogoed—purchased by the Burger King restaurants located in the Wyoming and Colorado trade area. In its Final Order of Dismissal, without elaboration, the trial judge dismissed these claims as conclusory and insufficient to state a claim upon which relief could be granted. We conclude that concerning Burger King and Carpenter the complaint does fail; concerning Davmor, this claim for relief was sufficiently alleged.

To show a cause of action based upon the section 2 offense of attempting to monopolize, a plaintiff must sufficiently allege the defendant's specific intent to monopolize and the dangerous probability that the attempt would result in a monopoly. *Pacific Eng'r & Prod. Co. v. Kerr-McGee Corp.*, 551 F.2d 790, 791 (10th Cir.), *cert. denied*, 434 U.S. 879, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977). This latter requirement entails showing the relevant market and the power of the defendant in it. *E. J. Delaney Corp. v. Bonne Bell, Inc.*, 525 F.2d 296, 306 (10th Cir. 1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976).

The relevant allegations against Davmor in this context are essentially the same as those relating to the section 1 theory discussed above. Having concluded that Perington's allegations show a claim sufficient to survive a challenge to the pleading that competition in the Burger King restaurant market may be substantially lessened by Davmor's device of cancellation of Perington for not buying the logoed "Sweetheart" cups, the question here is whether Perington's allegations show a dangerous probability that Davmor would thereby acquire monopoly power in the market for supplying all items to Burger King restaurants.

Perington's complaint alleges that Davmor is the exclusive source for many of the market's products and a prime source for others, and thus dominates the relevant market. As discussed above, the allegation that upon termination Perington was eliminated completely from the market, in context with the letter of Burger King to its franchisees attached as an exhibit, supports a reasonable inference, albeit not compelled, that Davmor's use of the device resulted in the complete exclusion of Davmor's competitors from the relevant market. In view of Davmor's alleged dominant position, the complaint sufficiently alleges the dangerous probability that monopoly power would result, and we cannot say beyond doubt that Perington would be unable to show the specific intent to monopolize.

The "attempt to monopolize" claim against Burger King, however, was properly dismissed; the issue here is different from that concerning Davmor. The gravamen of an offense involving monopolization is the power of the defendant in the market in which it competes. *See generally* L. Sullivan, Handbook of the Law of Antitrust §§ 12–21 (1976). The mere fact that a company exerts control within its own vertical framework through trademarks or otherwise does not speak to the question of power in its own market. *See United States v. Du Pont De Nemours Co.*, 351 U.S. 377, 393, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Burger King competes in the fast-food industry and Perington's allegations do not address that market at all. Accordingly, the claim against Burger King was properly dismissed.

For similar reasons, the claim against Carpenter is insufficient. The complaint shows on its face that Carpenter does not compete in the market in which Davmor operates, for it acts as a direct supplier, not an intermediate supplier. We cannot conclude under these circumstances that Carpenter could have monopolized the market for all goods used by Burger King restaurants.

#### b. Conspiracy to Monopolize

■ The remaining Sherman Act question is whether the allegations support a

claim that defendants conspired to monopolize the market for all goods used by Burger King restaurants.[6] Conspiring to monopolize is a separate offense under section 2, requiring less in the way of proof than the other section 2 offenses. In this context, a plaintiff need show defendants' specific intent to monopolize "any part" of interstate commerce. *Salco Corp. v. General Motors Corp., Buick Div.*, 517 F.2d 567, 576 (10th Cir. 1975). The market power in a "relevant market" need not be proved. *Id.* Perington's complaint alleges intent; it also specifies the targeted part of interstate commerce to be the market for supplying the restaurants located in the Colorado and Wyoming trade area. The issue presented here is whether traders oriented vertically to each other can be found in violation of section 2 by conspiring to monopolize one horizontal market intersecting the vertical arrangement. That is, although Burger King and Carpenter were not attempting to exclude their competitors, does their complicity in Davmor's efforts to exclude its competitors support a possible finding of a conspiracy to monopolize any part of interstate commerce? Under the circumstances of this case, we believe it does.

The literal words of the statute do not supply an obvious answer to this issue; a conspiracy aimed at "any part" of interstate commerce is prohibited, however, thus suggesting one horizontal market in which at least one coconspirator competes suffices. On the other hand, it also refers to conspiring "to monopolize," suggesting that each coconspirator must intend exclusion of its own competitors, *i. e.*, a purely horizontal conspiracy.

It has long been recognized that sections 1 and 2 of the Sherman Act overlap in part and also supplement each other. *Standard Oil Co. v. United States*, 221 U.S. 1, 59–62, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Section 1 can be said to be directed in the main to devices or conduct that destroy competition; section 2 prohibits the anticompetitive result described as monopolization. *American Tobacco Co. v. United States*, 328 U.S. 781,

809, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Although the offense of conspiring to monopolize appears to address the means by which competition is harmed, the gravamen of that offense is the intent to achieve the unlawful result. "It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful." *Id.* at 809, 66 S.Ct. at 1139.

The fact that Davmor's coconspirators competed in markets different from Davmor's market does not preclude finding a conspiracy to monopolize Davmor's market. It does, however, potentially impact upon whether Burger King and Carpenter had the specific intent to erect that monopoly because they would not benefit from the foreclosure of Davmor's competitors in the classical sense, *i. e.*, there was no identity of competitors and hence no elimination of their competitors. Each arguably would benefit, however, from participating in Davmor's anticompetitive arrangement— Carpenter as a direct supplier of Davmor products and Burger King as Davmor's parent corporation—and thus arguably had reason to conspire with Davmor. This, of course, is an evidentiary question to be determined on the merits. At this stage of the proceedings, it is sufficient to conclude that the complaint supports a claim of conspiracy to monopolize against all three defendants.

## II

### The Tying Claim

Perington's original complaint, *inter alia*, alleged an unlawful tying arrangement in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and section 3 of the Clayton Act, 15 U.S.C. § 14. The alleged tied products were Sweetheart cups; no tying products were specified in the complaint, although the classic tying arrangement requires both a tying and a tied product. *Colorado Pump & Supply Co. v. Febco*, 472 F.2d 637, 640 (10th Cir.), *cert. denied*, 411 U.S. 987, 93 S.Ct. 2274, 36 L.Ed.2d 965 (1973).

6. Whether Perington's complaint asserts the claim of conspiring to monopolize is ambiguous, but in view of the liberal rules of pleading, we conclude it fairly raises this claim.

In an answer to interrogatories, Perington identified the tying product as "the right to sell to Burger King franchisees," but in its brief opposing defendants' Fed.R. Civ.P. 56(b) motion for partial summary judgment on these issues it shifted to the theory that the tying product was the right to use the Burger King logo. At a hearing before the trial judge, Perington was confronted with this Court's holding in *Redd v. Shell Oil Co.*, 524 F.2d 1054 (10th Cir. 1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976), and abandoned its contention that the tying product was the right to use the Burger King logo. Instead, Perington argued that unspecified promotional products bearing the Burger King logo were the tying products. Perington contended that in order to acquire these products, allegedly available only from Davmor, it had to buy the tied product, Sweetheart cups, even though it could obtain suitable cups elsewhere. Because of the confusing changes in the theory of liability and because Perington could not identify the promotional products, the trial judge ordered Perington to supplement its complaint by specifically delineating the identity of the promotional products and the dates of offers conditioned on the tied product also being purchased.

Perington thereafter filed a second amended complaint setting forth seven specific items, noting that the list was only partial. Contrary to the court's order, the complaint did not identify when the items were conditionally offered to Perington. Defendants renewed the Rule 56(b) motion. Perington responded with a statement opposing the renewed motion and attached thereto the affidavit of Alton L. Perington, its President. The affidavit asserted the only facts known to Perington were that the promotional products were sold as part of promotions made *after* termination of the contract. The accompanying memorandum stated that information concerning promotions conducted "since" the contract's termination were peculiarly within the knowledge of defendants.

Thereafter, the trial court ordered final dismissal of Perington's tying claims, reasoning that items sold pursuant to promotions after the termination of the contract could not have been tying products. The court also noted the history of Perington's attempts to make a case of illegal tying and that it had been given more than an adequate opportunity to develop its case.

From our consideration of the record, as summarized above, we hold the trial court correctly granted defendants' motion for partial summary judgment.[7] While summary judgments in antitrust litigation are to be used sparingly and are seldom justified. *United States v. Employing Plasterers Ass'n*, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954), the circumstances of this case compel the conclusion that Perington failed to survive the challenge to the merits of its claim.

After considerable assistance by the trial court in identifying its theory, followed by an order that it specifically identify the tying products and when they were conditionally offered, Perington attempted to survive the challenge by claiming the necessary proof was in the hands of defendants. Perington, however, was ordered to supply information concerning offerings to it made *before* the termination of the contract, information that, under its final theory, had to be in its own possession. Put finally to its proof, Perington simply did not come forward. *See Natrona Service, Inc. v. Continental Oil Co.*, 598 F.2d 1294 (10th Cir. 1979). We cannot accept Perington's desire "to get to a jury on the basis of the allegations in [its] complaint[ ], coupled with the hope that something can be developed at trial in a way to support those allegations. . . ." *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

---

**7.** While the trial court treated the affidavit as "an additional amendment to the amended complaint, as amended," the order related to the Rule 56(b) motion and an evidentiary question. We therefore treat the affidavit as a matter outside of the pleadings and the order as one granting summary judgment.

At the eleventh hour before oral argument of this appeal Perington submitted a supplemental brief raising the issue whether "the right to sell to Burger King franchisees" can be a tying product within the meaning of the antitrust laws. Because Perington explicitly abandoned this theory in response to a direct question by the trial court, we decline to consider this issue and express no opinion thereon.

The judgment is affirmed in part, reversed in part, and remanded with direction for further proceedings consistent herewith.

WILLIAM E. DOYLE, Circuit Judge, concurs in the opinion but in view of the remand for trial would not affirm the partial summary judgment on the tying claim.

## ON REHEARING

■ In its petition for rehearing, Carpenter Paper Company called to our attention documents that were not before the Court when we determined that Perington had adequately raised in its appeal the propriety of the Fed.R.Civ.P. 12(b)(6) order dismissing Carpenter from the suit. Carpenter contends that Perington did not intend to appeal the Rule 12(b)(6) dismissal when the notice of appeal was filed. We granted rehearing, giving Perington Wholesale, Inc. an opportunity to answer Carpenter's arguments.

Carpenter contends the following evidence requires us to conclude Perington did not intend to appeal the dismissal of Carpenter from the lawsuit: it was not served with the notice of appeal, as inferentially supported by a letter from the clerk of the district court sent to counsel of the other parties concerning designation of the record on appeal; the notice of appeal listed only Burger King and Davmor in the caption; and the notice of appeal specified only appeal from "the final Order of Dismissal entered on the 23rd day of August, 1977." We disagree.

Our jurisdiction is limited to the judgment, order, or part thereof designated in the notice of appeal, *Scaramucci v. Dresser Industries, Inc.*, 427 F.2d 1309, 1318 (10th Cir. 1970), but the notice of appeal is not to be given a wooden interpretation. *See Fo-*

*man v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Herron v. Rozelle*, 480 F.2d 282, 285 (10th Cir. 1973). The question is whether the notice of appeal and subsequent appellate proceedings support the inference that at the time of filing the notice, appellant sought to appeal the unspecified order. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977). This is true even if the specified order appears unambiguous. *Vigil v. United States*, 430 F.2d 1357 (10th Cir. 1970).

To perfect an appeal, a party must file a notice of appeal that "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." Fed.R.App.P. 3(c). Nothing in the rules requires a listing of the appellees; thus, it is not fatal that Carpenter did not appear in the caption of the notice of appeal.

The notice of appeal must be filed with the clerk of the district court within thirty days of the date of entry of the order of judgment appealed from. 28 U.S.C. § 2107; Fed.R.App.P. 4(a). The duty to serve the notice falls on the clerk of the district court, who failed to serve Carpenter. But this does not conclude the issue because Fed.R.App.P. 3(d) provides that the clerk's failure to serve the notice does not affect the validity of the appeal.

The designation in the notice of appeal of the order appealed from, quoted above, is at best ambiguous. The docketing statement, filed on October 26, 1977, pursuant to Tenth Cir.R. 8, did name Carpenter as an appellee and specified issues it would raise against Carpenter. This document and all motions and briefs thereafter filed in the appeal appear to have been mailed to Carpenter. The exhibits to Carpenter's petition for rehearing indicate that on February 9, 1978, it notified the Clerk of this Court of its objection to being treated as an appellee.

Appraising the above-stated objective facts, we see three possible inferences: that Perington always intended to appeal the

dismissal of Carpenter; that at the time Perington filed the notice of appeal it did not think of the order concerning Carpenter, but if it had, it would have intended to appeal that order; or that Perington did not initially intend to appeal the order, but changed its mind before filing the docketing statement. We have no witching rod to divine Perington's subjective intent; and in a case like this we hold that the ambiguity should be resolved in favor of permitting the appeal to go forward. There is here no deception and prejudice to Carpenter. Since it did not receive the notice of appeal, Carpenter could not have been misled by the caption. The documents mailed to Carpenter fairly apprised it of the issues to be asserted against it with ample opportunity to prepare for the appeal. Carpenter could have filed with this Court a motion to dismiss for lack of jurisdiction pursuant to Tenth Cir.R. 9 once it knew of Perington's intent to go forward against it, but did not.

The Clerk of this Court, in response to Carpenter's letter of February 9, 1978, instructed Carpenter's counsel to "do whatever the circumstances may warrant," *i. e.*, to ignore the appeal at its peril. Carpenter, however, did not participate in the briefing and arguments on appeal, apparently based upon its view, which we reject, that no appeal was taken of the order dismissing it from the suit. Although Carpenter forfeited its right to be heard on the merits, this Court now chooses to grant Carpenter twenty days from the date of entry of this opinion to file a brief on the merits of its case, if it has contentions to make on the rulings decided against it. *See* Fed.R. App.P. 3(a). The mandate against Carpenter will be withheld until the Court has considered any brief so filed.

There has also been filed herein a petition for rehearing by Perington with respect to those issues decided in our original opinion against it. That motion is denied by unanimous vote of the panel.