In re **SOMBRERO REEF CLUB, INC.,** d/b/a **Latitude 24 Club Resort and** d/b/a **Latitude 24 Vacation Club, a Florida corporation, Debtor.**

**SOMBRERO REEF CLUB, INC., a Florida corporation, Plaintiff,**

v.

Harry F. **KNIGHT, as Revenue Collector of Monroe County, Florida; Caribank, f/k/a the Dania Bank; First National Bank of Marathon, a banking corporation organized under the laws of the United States of America; and Kingsail Corporation of Marathon, a Florida corporation, Defendants.**

**Bankruptcy No. 80–01255–BKC–AJC. Adv. No. 82–0579–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

July 14, 1988.

---

weeks, as she has been paid two weeks of that severance already.

Samuel L. Heller, Fort Lauderdale, Fla., for debtor.

Robert G. Hewitt, Miami, Fla., for Caribank, N.A. Successor to the Dania Bank.

Harry F. Knight, Key West, Fla., as Revenue Collector for Monroe County.

A.M. Schwitalla, Miami, Fla., for Kingsail Corp. of Marathon.

## MEMORANDUM OPINION ON ORDER OF REMAND

A. JAY CRISTOL, Bankruptcy Judge.

This case was tried by my predecessor, the Honorable Joseph A. Gassen. It was appealed and remanded before I was appointed to the bench. On or about August 14, 1985, a few months after my appointment, the successful appellant, Sombrero Reef, Inc., made a "Motion for Order Setting Aside and Withholding Order of Remand," in the United States District Court, Appeal Case No. 83–1114–CIV–Eaton.

A year or so later on December 12, 1986, Judge Eaton signed an Order Denying the Motion of Sombrero Reef, Inc. to Withold Order of Remand. The December 12, 1986 order again remanded the matter to the Bankruptcy Court in accordance with the Order of Remand entered by Judge Eaton on March 7, 1985.

It is difficult to deal with the remand of a matter tried before another judge. The court file and the record in this matter is enormous. I did not have the benefit of hearing the trial or being present at the numerous hearings which occurred long before my arrival on the scene. I am, therefore, limited to dealing with the record to carry out the remand.

Certain things are clear in the record. On June 6, 1983, Judge Eaton entered two orders. "Order Granting Extension of Time to File Appellant's Brief and Limiting Service of Briefs, etc." The order was in response to the "Motion for Extension of Time to File Appellant's Brief and for Order Limiting Service", signed by Samuel L. Heller, Esquire, on behalf of Sombrero Reef, Inc. Paragraphs 2 and 4 of the motion state as follows:

2. Appellant further represents to the Court that the only party having an interest in an appeal proceeding is Appellee KINGSAIL CORPORATION OF MARATHON as all of the other Appellees' lien interests in the property were satisfied on December 16, 1982 when the property involved herein was sold by order of the Bankruptcy Court or their lien interests were extinguished as a result of the sale free and clear of liens ordered by the court. Appellee KINGSAIL CORPORATION OF MARATHON, the third mortgagee, was the most junior lien creditor receiving sale proceeds and any reversal of the final judgment appealed herein would affect only Appellee KINGSAIL CORPORATION OF MARATHON.

4. Appellant SOMBRERO REEF CLUB, INC. further moves for entry of an order limiting service of all briefs, pleadings and notices herein to Appellee KINGSAIL CORPORATION OF MARATHON as it is the only party herein that presently has any financial interest in the disposition of this appeal for the reason set forth above.

Paragraph 2 of Judge Eaton's Order states:

1. That said motion be, and the same is hereby granted; Appellant SOMBRERO REEF CLUB, INC. is hereby granted until June 20, 1983 to file its main brief herein.

2. That inasmuch as Appellee KINGSAIL CORPORATION OF MARATHON is the only appellee having an interest in the disposition of the pending appeal, Appellant SOMBRERO REEF CLUB.... INC. will only be required to serve all briefs, pleadings and notices herein upon Appellee KINGSAIL CORPORATION OF MARATHON.

The second Order entered by Judge Eaton on June 6, 1983 states:

This date the Court entered an Order in this cause, styled "Order Granting Extension of Time to File Appellant's Brief and Limiting Service of Briefs Etc." The Order, *inter alia* permits Plaintiff to serve all future papers on only one named Defendant, Kingsail Corporation of Marathon, upon Plaintiff's representation that Kingsail is the only Defendant below with any interest in the present appeal.

It is, however,

ORDERED that Plaintiff/Appellant shall serve, by first class mail, a copy of this Order, as well as copies of its motion for limited service and Order approving same upon each named Defendant below. Any such Defendant may inform the Court, and Plaintiff's counsel, in writing and within twenty (20) days of the date of this Order of its desire to participate in this appeal. Any defendant who makes such an appearance shall thereafter be served with all briefs and other documents, and shall enter this appeal in accordance with the Bankruptcy Rules.

No defendant, other than Kingsail Corporation of Marathon, appeared or informed the court of its desire to participate.

It thus appears that only Kingsail Corporation of Marathon can be affected by this order on remand.

The matter before the court on remand is a post-appeal proceeding on a 1982 complaint filed by the debtor, Sombrero Reef Club, Inc., which sought the imposition of a Section 506(c) lien on the debtor's own real property, a 57 room marina resort facility ("the marina resort") in Marathon, Florida. When the marina resort was sold, pursuant to a court ordered auction held several weeks after this court entered its September 10, 1982 final judgment, the successful bidder was the third mortgagee, Kingsail Corporation of Florida ("Kingsail") which acquired the real property for $1,485,000 cash. The defendant who remains as a party to the present adversary proceeding is only Kingsail.

The debtor claimed its lien in part[1] for the reasonable value of those services the debtor's counsel, Samuel L. Heller ("Heller"), had rendered herein. The services resulted in this court removing (in a series of litigation efforts initiated by debtor's counsel) the interests of several hundred parties who had purchased from the debtor, before bankruptcy, right-of-use time-share contracts, that represented a total of 390 time-share weeks. Bankruptcy Judge Joseph A. Gassen awarded the debtor a $48,500 lien for Heller's legal services. On appeal, the United States District Court for the Southern District of Florida remanded the cause to this Court with a direction that it re-determine the Section 506(c) expenses

---

1. In its original complaint the debtor also sought a lien for the reasonable value of insurance premiums advanced by debtor to preserve the resort and for the reasonable value of a watchman's services; this Court's September 10, 1982 final judgment (entered by Bankruptcy Judge Joseph A. Gassen) awarded the debtor a Section 506(c) lien for the insurance premiums and the watchman's services. That portion of the final judgment was not appealed and is therefore not before the Court at this time.

to which the debtor is entitled for its attorney's fees and that this court explain its calculation of the extent of the benefit conferred upon the secured creditor by the services of the debtor's attorney.

At a retrial proceeding held by this court on July 2, 1987, the only parties that appeared were Caribank and Kingsail. Caribank argued that it is not a party. Both the debtor and Caribank requested that this court take judicial notice of the prior trial proceeding conducted by Judge Gassen and certain matters, discussed *infra*, that related to the appeal proceeding in the District Court. Neither the debtor nor Caribank offered any additional testimony or exhibits.

The issues now before this court are:

1. What was the reasonable value of the legal services the debtor's counsel performed in removing from the defendants' collateral the time-sharing contracts?

2. What was the extent of the benefit conferred upon Kingsail as a result of the legal services that secured removal of the time-share contracts from the fee title?

Debtor argues that if the amount of benefit to *any* of the four defendant-lien creditors exceeds the $48,500 previously awarded by this court, then this court may surcharge the cash distribution of the benefitted defendants. He argues that the $1,485,000 auction sale proceeds should be charged an additional amount that this court determines is due debtor for its Section 506(c) lien for the attorney's services. He argues this notwithstanding that three of the four defendants did not fully participate in the appeal to the District Court. The court has already indicated that it does not believe any defendant has any liability other than Kingsail. If the other three defendants were in fact still parties for purposes of this proceeding, the court does not believe that they were in any way benefited and that all benefits inured to

only the most junior lienholder that received some payment.

## FINDINGS OF FACTS

1. On September 30, 1980, the debtor filed its chapter 11 petition to avoid losing its marina resort in a mortgage foreclosure.

2. In the first fourteen months of its chapter 11, the debtor signed purchase agreements with five separate buyers each of whom defaulted or was otherwise unable to consummate the purchase of the marina resort because it was burdened with several hundred executory right-of-use time-share contracts the debtor had sold to the public in the period 1978–1980. Each contract sold to the time-share purchaser the right to use one room in the facility for one week annually for a period of 30 years; the extant contracts at the filing of the chapter 11 represented approximately 390 time-share room/weeks.

The mortgage interests of each of the four parties holding mortgages on the debtor's property were subject to four pre-bankruptcy nondisturbance agreements each mortgagee had executed with the debtor in compliance with Florida law.[2] Under the nondisturbance agreements that Caribank, First National Bank of Marathon and Kingsail executed, each agreed that any mortgage foreclosure would not extinguish or impair the rights of the time-share contract holders.

3. By the summer of 1981, five of the debtor's contracts to sell the marina resort had fallen through. Heller therefore concluded that the property would remain unmarketable so long as the time-share contracts remained outstanding. In mid–1981 Heller initiated on behalf of the debtor, a series of litigation efforts in this court in an attempt to destroy the time-share contracts as burdens on the marina resort's title. The first such action resulted in a declaratory judgment which extinguished

---

**2.** Prior to 1981, the applicable regulations restricting the marketing of time-share memberships were contained in the Florida Administrative Code. The provision of the 1981 Florida Real Estate Time-Sharing Act that governed

nondisturbance agreements in 1982 (when this Court rendered its decision regarding the debtor's time-share contracts) was and is Section 721.08, Florida Statutes.

130 of the 390 time-share weeks (by reason of various contract defaults that the debtor established.)

In November 1981, the debtor launched two proceedings in this court in an attempt to unburden the marina resort from the contracts evidencing the remaining 260 time-share weeks. It moved to reject the time-share contracts as executory contracts under Section 365 of the Bankruptcy Code and simultaneously brought an adversary suit against 264 defendants (the holders of the time-share contracts) to obtain a declaratory judgment that if rejection was authorized by the court, the interests of the time-share buyers would not survive rejection as either lessees or real estate purchasers in possession. This suit also asked for a permanent injunction to restrain the time-share members from attempting to come onto the debtor's property.

On March 24, 1982, this court[3] authorized the debtor to reject all of the remaining time-share contracts and entered a declaratory judgment that none of the time-share purchasers retained any interest in the debtor's marina resort that survived rejection under Section 365. All time-share holders were permanently enjoined from thereafter coming upon the debtor's marina resort.

4. Appraisal testimony received in the 1982 trial established that in August 1982, the debtor's marina resort had a gross fair market value of $3,150,000—without reduction for the burden of the time-share contracts. As the 30–year contracts then had an average remaining life of 28 years, the value of that burden on the fee title was also established by appraisal testimony to be $432,000. Thus, the legal services debtor's counsel performed in removing the time-share contracts confered a $432,000 benefit to the property and to the interests of the defendant-lien creditors.

5. The debtor's counsel established at trial through detailed time records and testimony that out of 2,039 hours of service rendered in the chapter 11 proceeding (as

of August 24, 1982), approximately 900 hours was expended in eliminating the time-share contracts, securing a determination as to the validity, priority and amount of liens, negotiating with zoning officials to preserve development permits which would permit the debtor to increase the number of residence units and construct a pier addition adjoining its property and in securing an agreement with the Florida Department of Natural Resources to preserve a submerged sovereignty land lease the debtor had effected before bankruptcy. (These valuable permits and lease would have otherwise expired during the chapter 11.)

6. Uncontroverted expert testimony from a South Florida bankruptcy practitioner of 34 years experience confirmed that the legal questions involved in these litigation efforts were novel. The ruling that debtor's counsel secured [that time-share interests could be rejected as executory contracts and were not entitled to post-rejection protection under either Section 365(h) or Section 365(i)] apparently contributed to the actions of Congress which extended the protection of Section 365(h) to purchasers of time-share interests in the Bankruptcy Amendments and Federal Judgeship Act of 1984.[4] Collier observed in 2 *Collier on Bankruptcy* (15th ed.) ¶ 365.09 (at page 365–58):

> The reason for the legislative change was case law holding that timeshare interests could be rejected as executory contracts and that the purchasers were not entitled to protection under either section 365(h) as lessees or section 365(i) as vendees [citation to *In re Sombrero Reef Club, Inc.*, 18 B.R. 612, 6 C.B.C.2d 506 (B.Ct., S.D.Fla.1982)].

7. This court previously held in its 1982 final judgment that:

> The attorney for the debtor in possession has established that a reasonable fee for his services in the litigation concerning the time-share membership agreements and in determining the validity, priority, and amount of liens far exceeds the amounts which can be assessed

3. *In re Sombrero Reef Club, Inc.,* 18 B.R. 612 (Bankr.S.D.Fla.1982).

4. Pub.L. No. 98–353 (1984).

under § 506(c). *The Court finds that a benefit has resulted to the secured parties by reason of that litigation.* Had this not occurred, each of the secured parties would have been put to the inconvenience and expense of resolving the issues created by the time-share memberships and the disputes among the lienors. The court finds that the reasonable amount of the attorney's fees for the debtor in possession which can be awarded under § 506(c) for those services is $48,500.... (emphasis supplied).

None of the defendants ever challenged the above finding "that a benefit has resulted to the secured parties by reason of (the litigation initiated by debtor's counsel)" by appealing or cross-appealing the final judgment.

8. The court finds that the total reasonable value of the aforementioned legal services performed by debtor's counsel was $48,500. (The Order of Remand from the District Court states: "The Bankruptcy Court shall award no less than $48,500 on remand.")

9. On August 14, 1985,—some five months after the District Court had entered its Order of Remand,—the debtor filed a motion in the District court to Modify the Order of Remand so as to withhold the court's mandate against all of the defendants-appellees other than Kingsail. As only Kingsail had been served with the debtor's brief that had prompted the District Court to reverse this court's final judgment. The debtor asked this District Court to set aside its Order of Remand so as to grant[5] all of the other appellees 20 days in which to file a brief on the merits. The only defendant who responded to the debtor's motion was Caribank. Caribank objected to the debtor's motion. The Dis-

trict Court denied the debtor's motion (observing in its December 12, 1986 order that "withholding remand and directing the appellees to file briefs would result in an inefficient use of judicial resources").

### CONCLUSIONS OF LAW

1. the court concludes that the benefit conferred to Kingsail Corporation of Marathon is equal to the reasonable value of the legal services performed by the debtor's counsel in securing the removal of the time-share contract and performing the other services, described *supra*, that preserved the property for the benefits of Kingsail Corporation of Marathon. The debtor was therefore entitled to recover from the proceeds of sale of the real property, pursuant to Section 506(c) of the Bankruptcy Code.

Accordingly, the court will enter a separate Final Judgment against the defendant, Kingsail Corporation of Marathon, for said amount together with interest thereon from September 10, 1982.

---

5. An order affording to those appellees who did not initially participate in briefing the right to submit briefs *after* the appellate court's decision was entered by the Tenth Circuit Court in *Perington Wholesale, Inc. v. Burger King Corp.,* 631 F.2d 1369 (10th Cir.1979) wherein the Court held, 631 F.2d 1380:

> Carpenter ... did not participate in the briefing and arguments on appeal, apparently based upon its view, which we reject, that no appeal was taken of the order dismissing it

from the suit. *Although Carpenter forfeited its right to be heard on the merits, this Court now chooses to grant Carpenter twenty days from the date of entry of this opinion to file a brief on the merits of its case, if it has contentions to make on the rulings decided against it. See Fed.R.App.P. 3(a). The mandate against Carpenter will be withheld until the Court has considered any brief so filed.* (emphasis added).