**KLAMATH LAKE PHARMACEUTICAL ASSOCIATION, an Oregon Nonprofit Corporation, on behalf of its assignors, Plaintiff,**

v.

**KLAMATH MEDICAL SERVICE BUREAU, an Oregon Nonprofit Corporation, and Klamath Bureau Pharmacy, Inc., a now-dissolved Oregon Nonprofit Corporation, Defendants.**

Civ. No. 78–868.

United States District Court,
D. Oregon.

Feb. 27, 1981.

Henry Kane, Beaverton, Or., for plaintiff.

Thomas M. Triplett, David Axelrod, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants.

## OPINION

SOLOMON, District Judge:

*INTRODUCTION*

Plaintiff is the assignee of several pharmacies in the Klamath Falls area. In 1978, it filed this action against the Klamath Medical Service Bureau (KMSB), a nonprofit provider of health insurance and health care services, and Klamath Bureau Pharmacy, Inc. (KBPI), a nonprofit pharmacy.[1]

KMSB offers four health insurance policies. The first type provides major medical coverage with basic benefits. The basic benefits provision includes a pharmacy benefit, which permits insureds to purchase prescription drugs from the KMSB pharmacy and pay only one or two dollars for the prescription. This contribution is called a "co-pay." The major medical provision of this policy covers the insured for 80 percent of all medical expenses, including prescription drugs, in excess of a $50.00 deductible. Under this provision, the insured is not limited to the KMSB pharmacy but may have prescriptions filled at any pharmacy.

The second policy includes major medical coverage, and a basic benefit package, without the pharmacy benefit. This policy is available only on a group basis. The third policy is the same as the second, and is available to individuals only. The fourth supplements medicare coverage and offers no coverage for prescription drugs.

Plaintiff attacks the prescription drug benefit of the first policy, in three separate causes of action. In the first, plaintiff contends that KMSB purchased prescription drugs at prices and terms not available to plaintiff's assignors, in violation of the Robinson Patman Act. In the second, it contends that KMSB has created an illegal tying arrangement by including a prescrip-

---

1. KBPI was dissolved in 1976, and KMSB purchased its assets.

tion drug benefit in its insurance coverage. In the third, it contends that the prescription drug benefit violates the Sherman and Clayton Acts because it restrains KMSB's insureds from purchasing prescription drugs from plaintiff's assignors.

Defendants seek a partial summary judgment. They contend that the McCarran-Ferguson Act exempts any contract between KMSB and its insureds from the Clayton and Sherman Acts. They, therefore, assert that they are entitled to judgment on the second cause of action, and also on any of the violations charged in the third cause of action based on a contract between KMSB and its insureds.

## McCARRAN–FERGUSON ACT

To qualify for an exemption under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, three conditions must be met. First, the anticompetitive practices must be part of the business of insurance, not merely the business of insurance companies.[2] Second, those practices must be regulated by the state.[3] Third, the anticompetitive practices must not take the form of coercion, intimidation or boycott.[4]

### 1. *Business of Insurance*

■ Plaintiff contends that the prescription drug benefit included in one type of KMSB insurance policy is not the "business of insurance" under the McCarran-Ferguson Act. It cites *Group Life and Health Insurance Co. v. Royal Drug*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). In that case, Blue Shield offered health insurance policies which included a prescription drug benefit. Insureds with this coverage who purchased their prescriptions from a participating pharmacy paid only two dollars for the prescription, and the pharmacy recovered its cost of the prescription from Blue Shield. But an insured who purchased a prescription from a non-participating pharmacy paid the pharmacy the full price, and would then be reimbursed by Blue Shield for 75 percent of the full price less two dollars.

Any licensed pharmacy could be a participating pharmacy, but the participating pharmacies were required to accept a two dollar mark-up on each sale. Royal Drug contended that the agreements between Blue Shield and the participating pharmacists violated the antitrust laws because they discouraged Blue Shield's insureds from using non-participating pharmacies. Blue Shield contended that the agreements were "the business of insurance" and were exempt from the antitrust laws under the McCarran-Ferguson Act.

The Supreme Court defined the "business of insurance" to include two critical elements: the spreading and underwriting of an insured's risk and a relationship between the insurer and the insured. *Id.* at 211 and 215–216, 99 S.Ct. at 1076–1077. The Court held that the provider agreements between Blue Shield and the participating pharmacies contained neither of these elements. First, it rejected Blue Shield's argument that the provider agreements were basic to

**2.** 15 U.S.C. § 1011:
Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

**3.** 15 U.S.C. § 1012:
(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which im-

poses a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 14, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

**4.** 15 U.S.C. § 1013(b):
Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation.

the pharmacy benefits they offered their insureds, and held that the provider agreements "serve[d] only to minimize the costs Blue Shield incurs in fulfilling its underwriting obligations." This differed from Blue Shield's obligation "under its insurance policies, which insure against the risk that policy holders will be unable to pay for prescription drugs." *Id.* at 213, 99 S.Ct. at 1074. Second, the agreements were not between an insurer and an insured. Blue Shield was therefore not exempt under the McCarran-Ferguson Act.

Although this case, like *Royal Drug*, involves a pharmacy benefit, the two cases are distinguishable. In *Royal Drug*, plaintiffs challenged an agreement between an insurer and drug providers, and the Court held that because these agreements did not directly spread or underwrite the insured's risk of needing prescription drugs, they were not the business of insurance. Here, plaintiff challenges the pharmacy benefit in the insurance policy itself. The benefit, like other provisions in the insurance policy, spreads the risk that the insured may need the covered service among all those who pay premiums for that coverage. *Royal Drug* by its own terms does not extend to benefit provisions in the insurance policy itself. *Id.* at 213, 230 n. 37, 99 S.Ct. at 1074.

I hold that the pharmacy benefit included in KMSB's insurance policies with its insureds satisfies the "business of insurance" requirement of the McCarran-Ferguson Act.

### 2. *State Regulation*

■ The second requirement of the McCarran-Ferguson Act is that the business of insurance be regulated by state law. 15 U.S.C. § 1012(b).

KMSB is regulated by the Oregon Insurance Code under ORS § 750.005–.340, the provisions which cover Health Care Contractors. These sections make applicable to KMSB many of the regulations to which the business of insurance generally is subject. Section 743.006 requires insurers to submit their policy forms to the Insurance Commissioner for approval. Section 743.-009 requires the Insurance Commissioner to disapprove the policies if they do not comply with the law, are prejudicial to the insurer's policy holders, or are unjust, unfair, or inequitable. Subsection 746.160(3) forbids insurance companies from "doing anything which is detrimental to free competition in the business or injurious to the insuring public."

This regulatory scheme satisfies the second requirement of the McCarran-Ferguson Act. *Dexter v. Life Assurance Society of the United States*, 527 F.2d 233 (2nd Cir. 1975); *Transnational Insurance Co. v. Rosenlund*, 261 F.Supp. 12, 25–26 (D.Or. 1966).

■ Plaintiff contends that the McCarran-Ferguson Act does not apply because the Oregon Insurance Code does not specifically regulate the practice of pharmacy, or the particular practices in issue here. If the state regulates the business of insurance, and the practices challenged are part of the business of insurance, the failure of the state to react to a particular practice does not affect the application of the McCarran-Ferguson Act. *Addrisi v. Equitable Life Assurance Society of the United States*, 503 F.2d 725 (9th Cir. 1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975).

### 3. *Boycott*

■ Finally, plaintiff contends that KMSB's requirement that its insureds use the KMSB pharmacy to receive the pharmacy benefit amounts to a boycott, and is therefore subject to the antitrust laws under § 1013(b) of the McCarran-Ferguson Act. Specifically, plaintiff alleges that KMSB's pharmacy is in direct competition with plaintiff's assignors, and that KMSB has, with its co-conspirators, attempted to boycott, coerce, or intimidate plaintiff's assignors.[5]

---

**5.** Defendant's co-conspirators are identified as physicians affiliated with KMSB; public body signatories and employer signatories to KMSB contracts with prescription drug benefits; and labor unions that obtained KMSB contracts with prescription drug benefits for their members.

To meet the boycott exception, plaintiff must show that its assignors have been boycotted because they have been denied all access to KMSB insureds who purchase prescription drugs. In *St. Paul Fire and Marine Insurance v. Barry*, 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978), the Court found a boycott in the sale of medical malpractice insurance, because the concerted activity "foreclosed all possibility of competition anywhere in the relevant market." *Id.* at 553, 98 S.Ct. at 2935.

KMSB does not preclude its insureds from patronizing plaintiff's assignors. First, those insureds who have the pharmacy benefit also have major medical coverage, and when they have satisfied the nominal deduction, are reimbursed for prescription drug expenses without regard to the pharmacy at which they purchased the prescription. An insured may elect to use either part of his insurance coverage in claiming pharmacy benefits. The major medical coverage may be more advantageous because of the "co-pay" requirement of the pharmacy benefit. Second, even if the subscriber elects to use the KMSB pharmacy benefit, the insured may use other pharmacies in an emergency or when the KMSB pharmacy is closed, without losing the benefit.

I hold that there was no coercion, intimidation, or boycott.

*CONCLUSION*

Defendants' motion for partial summary judgment is granted. Defendants are entitled to judgment on the second cause of action, and on the third cause of action for those violations which are based on a contract between KMSB and its insureds.

I leave to future proceedings plaintiff's Robinson Patman Act claims, and also plaintiff's claims based on a tying agreement between KMSB and KBPI.