**James M. HOFFMAN, D.D.S., P.A. and James M. Hoffman, D.D.S., Plaintiffs,**

v.

**DELTA DENTAL PLAN OF MINNESOTA, Defendant.**

Civ. 3–80–67.

United States District Court, D. Minnesota, Third Division.

June 30, 1981.

---

James L. Wahlfors, Thomson, Lovett, Wahlfors & Moran, Ltd., Bloomington, Minn., for plaintiffs.

Wayne A. Hergott and Margo L. Struthers, Moss, Flaherty, Clarkson & Fletcher, Minneapolis, Minn., for defendant.

## MEMORANDUM & ORDER

DEVITT, Senior District Judge.

This is an antitrust action brought for alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and the corresponding state statute, Minn.State §§ 325D.51 and 325D.52.[1] This court has jurisdiction pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, 28 U.S.C. § 1337 and the doctrine of pendent jurisdiction. This matter is presently before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, plaintiff's and defendant's cross motions for summary judgment as to Counts II, III and IV of the complaint, defendant's motion for summary judgment on Count I, defendant's motion to dismiss the pendent state claims, and defendant's motion to limit the issues raised in Count II of the complaint, defendant's motion to dismiss plaintiff James M. Hoffman for lack of standing, and defendant's motion to dismiss plaintiffs' claim for a civil penalty. For the reasons set forth herein, defendant's motion

---

1. The Minnesota Antitrust Law of 1971, *Minn. Stat.* §§ 325.8011 to 325.8028 is now found in *Minn.Stat.* §§ 325D.49 to 325D.66. *See Minn. Stat.* § 325D.49.

to dismiss for lack of subject matter jurisdiction is denied, defendant's motion for summary judgment on Count I is denied, defendant's motion for summary judgment on Counts II, III and IV is granted, and defendant's motion to dismiss the pendent claims is granted in part and denied in part. Defendant's motion to dismiss James Hoffman, D.D.S. is denied for the nonce, and its motion to dismiss plaintiffs' claim for a civil penalty pursuant to Minn.Stat. § 325D.56 is granted.

The parties have stipulated to certain facts for the purposes of the cross motion for summary judgment. They are expressly incorporated herein by reference.

The plaintiffs are a professional corporation, solely owned by plaintiff James M. Hoffman, which employs Dr. Hoffman and is engaged in the practice of dentistry at three locations in western Hennepin and Anoka Counties in Minnesota. Plaintiff James M. Hoffman is a dentist licensed to practice in the State of Minnesota. Both the corporation and Dr. Hoffman specialize in the practice of endodontics. For the sake of convenience, plaintiffs will collectively be referred to as "Hoffman."

Defendant Delta Dental Plan of Minnesota ("Delta") is a non-profit dental service plan corporation organized pursuant to Minn.Stat. Chapters 317 and 62C. Delta is a third party payor which sells and underwrites prepaid dental coverage in the State of Minnesota.

Delta was formed in 1969 by the Minnesota Dental Association (MDA), a professional organization which sponsored the enabling legislation in Minnesota for health service plan corporations. Delta terminated its formal relationship with the MDA in 1971.

Delta is a membership organization; all of its members are dentists licensed to practice in the State of Minnesota who enter into a Dentist Membership and Participation Agreement ("Participation Agreement") with Delta. Approximately ninety-five (95) percent of dentists licensed in Minnesota are Delta members. Plaintiff Hoffman is not a member. Dentists who are not members of Delta are generally referred to as "non-participating" dentists.

Delta is managed by a board of twenty-one (21) directors. Fourteen (14) directors are Delta members; seven (7) are lay persons. The board is elected by the Delta membership.

Delta acts as a third party payor in purchasing dental services for its group subscribers, consisting of employee, union, and association groups. Subscriber contracts entered into between the group subscribers and Delta specify the benefits, exclusions, and conditions under which dental services will be provided.

The crux of the controversy between these parties involves a payment formula, whereby different levels of payments are made for services provided by participating and non-participating dentists. Simply stated, participating dentists receive payment directly from Delta at a maximum of the ninetieth percentile of participating dentists' usual fees. Non-participating dentists are limited to a maximum of the fifty-first percentile, and are not directly reimbursed by Delta. Delta admits that the main reason for the differential is to encourage participation by dentists in Delta. Covered persons are free to utilize the services of any dentist of their choosing.

I. Motion to Dismiss for Lack of Subject Matter Jurisdiction.

A. Application of the McCarran-Ferguson Act.

■ Section 2(b) to the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), provides that, to the extent that the "business of insurance" is regulated by state law, it is exempted from the application of the antitrust laws. We hold that, to the extent the contracts between Delta and its subscribers and participating dentists provide for a payment differential between participating and non-participating dentists, they do not constitute the "business of insurance" within the meaning of the Act.

In *Group Life & Health Ins. v. Royal Drug*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) ("*Royal Drug*") the Court determined that provider agreements between participating pharmacies and an insurer were not the "business of insurance." The Court noted that the primary elements of an insurance contract are the spreading and underwriting of a policyholder's risk. 99 S.Ct. at 1073. In *Royal Drug*, the provider agreements provided that policy holders buying drugs from participating pharmacies would pay only two dollars for each prescription, with Blue Shield reimbursing the participating pharmacy the difference between $2.00 and the pharmacies' cost for the drug. Patients using non-participating pharmacies received only 75% of their cost over $2.00. The Court rejected Blue Shield's argument that the pharmacy agreements helped underwrite the risk that an insured would not be able to pay for a prescription. *Id.* at 1074. The Court stated:

> The fallacy of the petitioners' position is that they confuse the obligations of Blue Shield under its insurance policies, which insure against the risk that policyholders will be unable to pay for prescription drugs during the period of coverage, and the agreements between Blue Shield and the participating pharmacies, *which serve only to minimize the costs Blue Shield incurs in fulfilling its underwriting obligations.*

*Id.* (emphasis supplied). The Court went on to conclude that the pharmacy agreements were no more than "arrangements for the purchase of goods and services..." *Id.*

The second aspect of the "business of insurance" focused on in the *Royal Drug* case was the relationship between the insurer and the insured. Closely related to this is the type of policy which can be issued, its reliability, interpretation and enforcement. *Id.* at 1075. The Court held that the pharmacy agreements were not closely related to Blue Cross' status as a reliable insurer. *Id.*

*Royal Drug* is not distinguishable on the basis that, in this instance, the provider agreements incorporate the terms of the subscriber contracts which describe the payment differential. The payment formula is set out in the subscriber contracts. If mere inclusion of this type of provision in a subscriber contract would result in an exemption from the Sherman Act, form would improperly be exalted over the substance of the arrangement at issue. The payment differential between participating and nonparticipating dentists does not serve the risk spreading or risk underwriting inherent in an insurance contract between an insurer and an insured. By this arrangement, Delta is at most minimizing the costs it incurs in fulfilling its underwriting obligations. *See Pireno v. New York State Chiropractic Association*, 650 F.2d 387 (2d Cir. 1981); *St. Bernard Hospital v. Hospital Service Assn. of New Orleans, Inc.*, 618 F.2d 1140, 1145 (5th Cir. 1980); *see also Bartholomew v. Virginia Chiropractors Association*, 612 F.2d 812, 819 (4th Cir. 1979) (Hall, J., concurring in part and dissenting in part) (where perpetrators and impact of conduct outside the insurance industry, no McCarran-Ferguson exemption available). And if the only reason for inclusion of the differential payment provision is to encourage participation in Delta, it is difficult to perceive how the relationship between insurer and insured is implicated.

Nor does the fact that the participation agreement provides for a five percent withholding of fees of participating dentists dictate that the differential payment provision be exempted from Sherman Act scrutiny. Discrete conduct must be examined in making a determination whether it is the business of insurance. *St. Bernard Hospital v. Hospital Service Association of New Orleans, Inc.*, 618 F.2d at 1144. Moreover, the purported risk spreading character of the withhold is doubtful in view of the fact that it has been discontinued, Delta has no plans to reinstate the withhold, and Delta has never been in apprehension of a problem in the payment of benefits. *Cf. National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City*, 479 F.Supp. 1012, 1018 (W.D.Mo. 1979), *affirmed*, 628

F.2d 1050 (8th Cir. 1980), *reversed on other grounds,* —— U.S. ——, 101 S.Ct. 2415, 69 L.Ed.2d 89 (1981) (provider agreement providing for ultimate reimbursement to providers if funds unavailable for full benefit payment did not result in risks falling on provider).

### B.  Interstate Commerce

Defendant also moves to dismiss plaintiffs' claims for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) on the ground that the acts of defendant complained of by plaintiffs neither take place in nor affect interstate commerce, as required by Sections 1 and 2 of the Sherman Act.

Plaintiffs allege in their complaint that the alleged restraint upon trade caused by the acts of Delta through its agreements with its participating dentists affects interstate commerce by reducing the volume of business available to nonparticipating dentists, thereby restricting their ability and incentive to purchase equipment manufactured and sold in interstate commerce, and by restricting the ability of out of state dentists to compete for the business of Delta-insured patients. Plaintiffs also allege that Delta by virtue of interlocking agreements with substantially identical Delta plans in other states, and by virtue of its payments of claims for insureds receiving services out of state, is engaged in interstate commerce.

Delta is a member of the Delta Dental Plans Association (DDPA), a national organization of Delta companies with headquarters in Chicago, Illinois. Delta companies pay dues to DDPA and receive services in return. The DDPA does not sell or administer national contracts, but it participates in the implementation of those contracts. Delta services national contracts which contain the benefit differential challenged in this action. Delta and two other Delta plans also own a computer service bureau located in San Francisco, California, which is used for claims processing by eight other Delta plans and twelve other entities.

A federal court has jurisdiction over Sherman Act claims if the business or conduct concerned occurs in interstate commerce or, though wholly intrastate, substantially affects commerce. *See McLain v. Real Estate Board of New Orleans,* 444 U.S. 233, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980). We reject Delta's contention that its business activities are purely local in character. Delta's administration of national contracts sufficiently establishes the necessary effect on interstate commerce necessary to sustain Sherman Act jurisdiction. The allegations of the complaint, if proved, would result in unreasonable burdens on the free flow of interstate commerce. *See Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 745, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976).

### II.  Motions for Summary Judgment.

### A.  The Group Boycott Claims

Count I of plaintiffs' complaint alleges that, by virtue of an arrangement between Delta, its group subscribers, and its participating dentists, the differential in payment for the services of participating and nonparticipating dentists is maintained, and covered persons are discouraged from utilizing the services of non-participating dentists. Plaintiffs assert this arrangement constitutes a group boycott in violation of the Sherman Act under a Rule of Reason analysis. Count II alleges a group boycott as a *per se* violation of Section 1 of the Sherman Act.[2] We conclude that as a matter of law there has been no *per se* group boycott within the meaning of the Sherman Act, and defendant is entitled to summary judgment as to Count II.

The threshold issue which must be considered is whether or not there is sufficient evidence of an agreement, combination, or conspiracy involving Delta to meet the requirements for a Section 1 violation. Because there is no substantial evidence of

---

**2.** Plaintiffs expressly are not asserting nor pursuing any claims of price fixing on the part of Delta or its members.

any concerted action involving the group subscribers of Delta with regard to the payment differential or inducement of covered persons to avoid utilizing non-participating dentists, we will consider only whether there can be concerted action between Delta and its members.

■■■ There must be more than one conspirator in order to have a group boycott. *See, e. g., Card v. National Life Ins. Co.,* 603 F.2d 828 (10th Cir. 1979). We reject defendant's argument that Delta, as a single entity, is not a horizontal competitor of Hoffman, and cannot conspire with itself. Because of the member control of Delta as evidenced by member domination of the Delta board of directors, the fact that membership is exclusively composed of participating dentists, and the creation of Delta by the Minnesota Dental Association, we conclude that the existence of concerted action is not precluded as a matter of law. *See Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia,* 624 F.2d 476 (4th Cir. 1980). Moreover, because of member control of Delta, Delta can be considered the agent of its members. Thus, the requirement that the alleged conspirators be horizontal competitors of the injured party is also satisfied. *Id.* at 480.

The remaining issue is whether the alleged conduct of Delta, taking the evidence in the light most favorable to the plaintiff, could be considered a group boycott. In *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 542–43, 98 S.Ct. 2923, 2930, 57 L.Ed.2d 932 (1978), the Supreme Court noted the lack of uniformity in the definition of the term "group boycott" in the case law. The Court defined the "generic concept of boycott" as a "method of pressuring a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." *Id.* at 541, 98 S.Ct. at 2929. In that case, the Court found that a *per se* group boycott existed as a result of an agreement between insurers "to refuse to deal on any terms with its customers." *Id.* at 544, 98 S.Ct. at 2931. This agreement "effectively barred St. Paul's policyholders from all access to alternative sources of coverage . . ." *Id.*

Delta argues that because it has not totally refused to deal with Hoffman as a non-participating dentist, and because patients are free to choose any dentist, that there can be no group boycott as a matter of law. Some cases have so held. *See Bartholomew v. Virginia Chiropractors Association,* 612 F.2d 812, 817–18 (4th Cir. 1979) (peer review system setting levels of reimbursement to insureds for chiropractic services not a boycott because patients free to choose doctors, system did not limit fees, and excess fees could be collected by doctors); *Travelers Ins. Co. v. Blue Cross of Western Pennsylvania,* 481 F.2d 80, 84 (3d Cir.), *cert. denied,* 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973) (economic inducements in contracts between insurer and participating hospital providers not "coercion" within "boycott, coercion, or intimidation" exception in McCarran-Ferguson Act); *Pireno v. New York State Chiropractic Assn,* [1979–2] Trade Cas. ¶ 62,758 at 78, 378 (S.D. N.Y. Mar. 16, 1979), *reversed on other grounds,* 650 F.2d 387 (2d Cir. 1981) (existence of peer review system setting reimburseable fees for chiropractic services not sufficient to show inducement of patients to refuse to deal); *Hahn v. Oregon Physicians' Service,* [1981–1] Trade Cas. ¶ 63,923 at 75, 783 (D.Or. Feb. 27, 1981) (discrimination in reimbursement between physicians and podiatrists by insurer not a group boycott because insureds free to obtain podiatric care); *Klamath Lake Pharmaceutical Assn. v. Klamath Medical Service Bureau,* 507 F.Supp. 980 (D.Or.1981) (insurer providing benefits only at own pharmacy, with insureds free to utilize services of any pharmacy not a group boycott).

■■■ We agree that this is not a case involving a group boycott which is *per se* illegal. The per se approach is appropriate only when the conduct complained of is coercive or exclusionary. *See e. g., E. A. McQuade Tours, Inc. v. Consolidated Air Tour Manual Committee,* 467 F.2d 178, 187 (5th Cir. 1972). Absent such conduct, application of the rule of reason is the correct approach in determining the legality of the

conduct. *Id.* In this instance, the purpose of the payment differential is to maintain Delta's level of membership. There is no evidence that indicates that Delta's conduct was motivated by a desire to exclude plaintiff from the practice of dentistry or even from serving Delta covered persons. This is clearly not the type of case where a *per se* approach is mandated by the presence of a " 'naked restraint of trade.' " *Id; see also Arizona v. Maricopa County Medical Society,* [1980–1] Trade Cas. ¶ 63,239 (9th Cir. May 20, 1980) *cert. granted,* —— U.S. ——, 101 S.Ct. 1512, 67 L.Ed.2d 813 (1980). Accordingly, there being no genuine issues of material fact, Delta is entitled to summary judgment with regard to Count II.

■ Plaintiff's basic claim is that Delta, its group subscribers and its membership have conspired to induce covered persons to utilize only the services of participating dentists. This inducement allegedly flows from the structure of the payment formula for participating and non-participating dentists. Plaintiff claims that the effect of this conspiracy restricts plaintiff's ability to compete in the dental market, and that this conduct has an adverse effect on competition in the delivery of dental services. Plaintiff has stated a claim for a rule of reason violation of Section 1 of the Sherman Act. Those cases requiring a *total* refusal to deal under similar facts read the Supreme Court's decision in the *Barry* case too narrowly. The Court did not purport to define the entire reach of the concept of group boycott, and expressly reserved opinion on whether mere interference with the relations of a nonmember of a combination and its members or others could be viewed as a *per se* group boycott. 438 U.S. at 545, n. 18, 98 S.Ct. at 2932, n. 18. *See also Smith v. Pro Football, Inc.,* 593 F.2d 1173, 1179, n. 22 (D.C.Cir.1978). Moreover, the Eighth Circuit Court of Appeals has noted that the term "group boycott" "is in reality a very broad label for divergent types of concerted activity." *Worthen Bank & Trust Co. v. National BankAmericard Inc.,* 485 F.2d 119, 125 (8th Cir. 1973). The consequences of a group boycott are that entities are no longer free to maintain the

independence essential to a free marketplace. *Id.* Plaintiffs may prove at trial that such is the case here.

■ Since there are genuine issues of material fact in dispute involving a rule of reason analysis of Delta's payment differential to non-participating dentists, defendant's motion for summary judgment on Count I must be denied.

## B. Attempt to Monopolize and Conspiracy to Monopolize

Count III of plaintiffs' complaint alleges an unlawful attempt by Delta to monopolize the practice of dentistry in the State of Minnesota through the imposition of economic penalties on non-participating dentists. Count IV alleges a conspiracy to monopolize the dental market on the part of Delta, its group subscribers and participating dentists. Delta is entitled to judgment on both of these counts.

■ In order to establish an attempt to monopolize a plaintiff must allege and prove a specific intent to monopolize and a dangerous probability of success in the relevant market. *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail,* 578 F.2d 1256, 1262 (8th Cir. 1978).

Plaintiff asserts that, since approximately 95 percent of dentists practicing in Minnesota are participating members of Delta, that Delta has established a monopoly in the practice of dentistry in the state, satisfying the element of a dangerous probability of success. The alleged goal of Delta in monopolizing the practice of dentistry is to obtain greater success in the sale of dental insurance.

■ The relevant product market involved is not the practice of dentistry, but is prepaid dental care. *See Nankin Hospital v. Michigan Hospital Service,* 361 F.Supp. 1199, 1209 (E.D.Mich.1973). Even if we assume that the relevant market is, as plaintiff contends, the practice of dentistry, the mere fact that 95% of practicing dentists have entered into participation agreements with Delta does not establish a monopoly on

the part of Delta of the practice of dentistry. Delta is in the business of prepaid dental coverage; estimates of its market share do not exceed 40 percent. Moreover, taking the practice of dentistry as a whole in Minnesota, Delta's share of dental purchases in the state is approximately only eight percent. In either case, not only is there no monopoly established, but there is not, as a matter of law, a dangerous probability that Delta will succeed in its alleged attempt. *See United States v. Empire Gas Corp.*, 537 F.2d 296, 305 (8th Cir. 1976) (market shares of 47 and 50 percent insufficient to show dangerous probability of success).

■ Moreover, there is no evidence of a specific intent on the part of Delta to monopolize. Plaintiff asserts, and Delta agrees, that the purpose of the payment differential is to encourage membership in Delta. This, without more, is insufficient to give rise to an inference of wrongful intent on the part of Delta. *See Hiland Dairy, Inc. v. Kroger Company*, 402 F.2d 968, 975 (8th Cir. 1968).

■ Defendant is also entitled to summary judgment on Count IV. In order to establish a conspiracy to monopolize, a plaintiff must prove a conspiracy, and a specific intent to monopolize any part of interstate commerce. *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1377 (10th Cir. 1979). Plaintiff need not prove relevant market. *Id.* As with Count III, plaintiffs have failed to raise any genuine issue of material fact with regard to Delta's specific intent to monopolize.

### III. Motion to Dismiss James M. Hoffman.

■ Defendant moves to dismiss the individual plaintiff, James M. Hoffman, D.D.S., for lack of standing. A shareholder generally does not have standing to assert a claim for an antitrust violation on the part of a corporation. *See Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358, 363 (9th Cir. 1955). But in view of the unique relationship between a professional and professional corporation, the possibility that there may be facts proved at trial which will

clarify the issue of standing of these plaintiffs, and the lack of any prejudice to the parties by deferring a ruling, defendant's motion to dismiss plaintiff James M. Hoffman, D.D.S., is denied for the nonce.

### IV. Pendent State Claims.

Defendant's motion to dismiss the pendent state claims is conditioned on this court's granting defendant's motions on the federal claims. Plaintiff's claim pursuant to *Minn.Stat.* § 325D.51 corresponds to the federal group boycott claim found in Counts I and II. The claim brought pursuant to *Minn.Stat.* § 325D.52 corresponds with the monopolization claims set forth in Counts III and IV of the claim. The only surviving federal claim is the rule of reason group boycott claim found in Count II. Accordingly, we will retain jurisdiction over the pendent claim set forth pursuant to *Minn. Stat.* § 325.8013 and decline to exercise pendent jurisdiction over the claim brought pursuant to *Minn.Stat.* § 325.8014.

### V. Civil Penalty Pursuant to *Minn.Stat.* § 325D.56.

*Minn.Stat.* § 325D.56 is entitled "Penalties for Violation," and provides for a civil penalty not to exceed $50,000 for any person found to have violated the provisions of the state antitrust law. That section also provides that a willful violation shall constitute a felony subject to fine and imprisonment. In addition, *Minn.Stat.* § 325D.57 provides for the recovery of treble damages by "[a]ny person, any governmental body, or the state of Minnesota or any of its subdivisions or agencies, injured by a violation of sections 325D.49 to 325D.66 ..." *Minn.Stat.* § 325D.58 provides for injunctive relief.

■ Neither parties have cited, nor has research produced, any case addressing a plaintiff's standing to recover the civil penalty provided for in *Minn.Stat.* § 325D.56. This statute, providing for penalties, both civil and criminal, for violations of the state antitrust laws is, on its face, a tool for public enforcement of these laws. This is in

contrast to the damage provision found in § 325D.57 which specifically sets forth those entities which may recover treble damages. We conclude the civil penalty provided for in *Minn.Stat.* § 325D.56 is not a remedy available to a private plaintiff.

*Conclusion*

Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED, defendant's motion for summary judgment on Count I is DENIED, defendant's motion for summary judgment on Counts II, III and IV is GRANTED, defendant's motion to dismiss plaintiff James M. Hoffman, D.D.S. is DENIED, defendant's motion to dismiss the pendent state claims is GRANTED in part and DENIED in part, and defendant's motion to dismiss plaintiff's claim for imposition of a penalty pursuant to *Minn.Stat.* § 325D.56 is GRANTED. The other motions of the parties are DENIED.