**MONUMENT BUILDERS OF GREATER KANSAS CITY, INC., Plaintiff–Appellant,**

v.

**AMERICAN CEMETERY ASSN. OF KANSAS, et al., Defendants–Appellees.**

No. 86–1497.

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1989.

Edward Ray Fechtel of Ray Fechtel, P.C., Eugene, Or., for plaintiff-appellant.

Edward M. Dolson (Roy R. Darke with him on the brief) of Dietrich, Davis, Dicus, Rowlands, Schmitt & Gorman, Kansas City, Mo., for defendant-appellee City of Olathe.

Stephen W. Armstrong of Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa. (David H. Marion and Bruce C. Johnson of Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., and John C. Monica of Shook, Hardy & Bacon, Kansas City, Mo., for defendant-appellee American Cemetery Assn. and David E. Everson, Jr. of Stinson, Mag & Fizzell, Kansas City, Mo., for defendants-appellees Mount Moriah Cemetery, Inc. and Chapel Hill Memorial Gardens, Inc. and various other defendants-appellees with him on the brief).

M. Duncan Grant of Pepper, Hamilton & Scheetz, Philadelphia, Pa. (Edward W. Madeira, Jr. and Sean P. Wajert of Pepper, Hamilton & Scheetz, Philadelphia, Pa., and John L. Vratil of Lathrop, Koontz & Norquist, Overland Park, Kan., with him on the brief), for defendant-appellee Jas. H. Matthews & Co.

Michael J. Gallagher of Wassberg, Gallagher & Jones, Kansas City, Mo. (Thomas M. Franklin of Wassberg, Gallagher & Jones, Kansas City, Mo., and Charles D. Kugler of Vasos, Kugler & Dickerson, Kansas City, Kan., for defendants-appellees Memorial Heritage, Inc. and D–W Newcomer's Sons; and Bernard J. Rhodes of Gage & Tucker, Kansas City, Mo., for defendants-appellees Mount Washington Cemetery and The Brooking Cemetery Assn., and various other defendants-appellees, with him on the brief).

Before SEYMOUR and McWILLIAMS, Circuit Judges, and BOHANON,[*] District Judge.

SEYMOUR, Circuit Judge.

Plaintiff Monument Builders of Greater Kansas City, Inc. is a trade association of independent grave marker builders and dealers. It brought this suit in the district of Kansas on behalf of several independent dealers in the Kansas City area against a large number of local cemeteries, two local cemetery associations, a national cemetery association, and a national manufacturer of bronze monuments. In its complaint, Monument Builders alleges that defendants conspired to engage in various anti-competitive practices in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1988). The district court dismissed the claims against a number of defendants located in Missouri on the basis of improper venue in the district of Kansas. It dismissed the remaining defendants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under either section of the Sherman Act. It also awarded certain defendants attorneys fees under Rule 11. *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Assn.*, 629 F.Supp. 1002 (D.Kan.1986). We reverse the dismissal for lack of venue and failure to state a claim, and reverse in part the awards of fees.

[*] The Honorable Luther L. Bohanon, Senior Judge for the United States District Court for the Western District of Oklahoma, sitting by designation.

## I.

In reviewing a dismissal under Rule 12(b)(6), we must accept all the allegations in the complaint as true. *See Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir.1979). What follows is a description of the complaint viewed through this forgiving lens.

At the heart of Monument Builders' complaint is a conspiracy among the various defendants to drive independent sellers of grave markers out of the market by forcing purchasers of cemetery plots to buy their marker from the cemetery of their choice. This plan has been implemented through a variety of anti-competitive devices, taking two primary forms: an outright prohibition by cemeteries against the installation of markers not purchased from the cemetery, and various surcharges assessed against customers who choose to purchase their markers from an independent dealer. For example, a cemetery might charge a plot purchaser who chooses not to buy the marker from the cemetery a high fee for installation of the marker or for care and upkeep of the marker. Thus a person desiring to buy a plot in a particular cemetery is either prohibited outright from purchasing a marker elsewhere, or is faced with prohibitively expensive surcharges which would not be assessed if the marker were purchased from the cemetery.[1]

Monument Builders brought its suit against thirty cemetery owners in the Kansas City area, thirteen of which own cemeteries only in Kansas, sixteen of which own cemeteries only in Missouri, and one of which owns cemeteries in both states. According to the complaint, approximately 70–75% of interments each year in the Kansas City area take place in these cemeteries. Monument Builders also sued the American, Kansas, and Missouri Cemetery Associations, and Jas. H. Matthews, Inc., a national manufacturer of bronze markers.

Count I of the complaint, brought against all defendants except Matthews, alleges that the local cemeteries horizontally conspired to engage in the anti-competitive practices described above, and that the practices constituted a tying arrangement that unreasonably restrained trade in violation of section 1 of the Sherman Act. In Count II, Monument Builders alleges that Matthews and the local and national cemetery associations conspired with the cemetery operators by advising, coordinating, and encouraging them to implement the challenged practices. In Count III, Monument Builders alleges that all the previously described conduct constitutes a "conspiracy and/or attempt" by all defendants to monopolize in violation of section 2 of the Sherman Act.

After granting Monument Builders leave to amend its complaint, the district court dismissed with prejudice a number of Missouri cemetery operators for lack of venue. The court found that these defendants did not "reside" or "do business" in the district of Kansas for purposes of the antitrust venue statutes, 15 U.S.C. §§ 15, 22 (1988), and that Monument Builders' claim against these defendants did not "arise" in the district of Kansas for purposes of the general federal question venue statute, 28 U.S.C. § 1391 (1982). It dismissed defendant D.W. Newcomer's Sons as an improper party.

Finally, the court dismissed the remaining defendants for failure to state a claim. The court held the allegations of conspiracy to be too vague and conclusory. Although the complaint alleged that defendants possessed 70–75% of the burial market, the court held the allegations of market power to be insufficient to support a claim of "forcing" with respect to the tying claim or

---

1. Although these allegations form the focus of the complaint, they are not an exhaustive description of the practices with which defendants are charged. Monument Builders also alleges that some cemeteries require bronze monuments to be composed of a certain alloy, and require customers desiring to install bronze monuments purchased elsewhere to have their marker tested at an independent laboratory. It also charges defendants with refusing to state the prices of markers separately from the prices of plots; assessing recording and bookkeeping fees not assessed against other customers; depriving customers of independent dealers of certain services that they perform for other customers, such as providing grave locations upon request; and imposing a variety of other lesser burdens on customers of independent dealers.

of "dangerous probability of success" with respect to the attempted monopolization claim. The court based this holding both on the dilution of the market percentage by the dismissal of the Missouri defendants and on the lack of allegations concerning the market power possessed by individual defendants. The court also dismissed any claim for damages against the City of Olathe[2] based on the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34–36 (1988), which immunizes local governments from damages liability in federal antitrust cases.

The court awarded attorneys fees in favor of various defendants based on the insufficiency of the complaint, the lack of venue, Monument Builder's claim against an improper party, and the bringing of a damages claim against an immune city government. Monument Builders appeals the dismissals for want of venue and for failure to state a claim under Rule 12(b)(6), and the resulting sanctions.[3] We address each claim of error in turn.

## II.

### VENUE

■ The district court granted the motions of twelve Missouri defendants to dismiss for lack of venue, concluding that none of these defendant corporations resided or transacted business in Kansas and that the alleged antitrust violations did not occur in Kansas. The unusual circumstances of this case create a difficult venue issue. We conclude, however, that the court's dismissal of the Missouri defendants for lack of venue was in error.

2. The City was sued as an owner and operator of a local cemetery.

3. Plaintiff appeals neither the dismissal of D.W. Newcomer's Sons as an improper party, nor the dismissal of damage claims against the City of Olathe.

4. "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or

After accepting affidavits, the district court held that the Missouri defendants were not inhabitants of Kansas and were neither found in Kansas nor transacting business there within the meaning of sections 4[4] and 12[5] of the Clayton Act. *Monument Builders*, 629 F.Supp. at 1005–06 (relying on *United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948)). Monument Builders does not contest this portion of the decision. Instead, it contends that the general venue statute, 28 U.S.C. § 1391(b), which provides for venue in the district where the claim arose, supplements the Clayton Act and can provide for venue in situations where the provisions of the Clayton Act alone would not. The Missouri defendants agree, Supplemental Brief of Missouri Appellees at 10, as they must, because we have long recognized that special venue statutes in general, and section 12 of the Clayton Act in particular, are supplemented by the venue provisions applicable to all civil cases. *Board of County Comm'rs. v. Wilshire Oil Co.*, 523 F.2d 125, 130 (10th Cir.1975); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3818 at 175 (2d ed. 1986) ("[I]t is now clear beyond any doubt that the general venue statutes apply to antitrust cases."); *cf. Pure Oil Co. v. Suarez*, 384 U.S. 202, 204–05, 86 S.Ct. 1394, 1395–96, 16 L.Ed.2d 474 (1966) (special venue statutes are supplemented by more liberal general venue statute, absent specific contrary indication).

The district court referred to the general venue statute in a paragraph addressing the motions of some of the Missouri defendants, but held that venue does not exist because "plaintiff has not sufficiently alleged or proven facts which even infer [sic]

is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."
15 U.S.C. § 15(a) (1988).

5. "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business."
15 U.S.C. § 22 (1988).

that the violation of the antitrust laws by these two defendants occurred in Kansas." *Monument Builders*, 629 F.Supp. at 1006. However, the court also stated that "the ultimate test is whether these defendants are engaged in the 'practical, everyday business or commercial concept of doing or carrying on business "of any substantial character"'" within the district." *Id.* at 1005 (quoting *United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948)). When it addressed the claims of the majority of the defendants, the district court explicitly applied only the *Scophony* test. In 1948, the general venue statute was narrower than the venue provisions of the Clayton Act, making *Scophony* the most expansive test by which a plaintiff could establish venue. The 1966 amendment to the general statute broadened the relevant standard by providing for venue in the district where the claim arose. Consequently, *Scophony* can no longer be described as the ultimate test.

Monument Builders argues that under the circumstances of this case, its claim against the Missouri defendants arose in Kansas within the meaning of section 1391(b), the general venue statute. The Missouri defendants respond that because the sale of grave sites involves the sale of real property which by definition occurs at a specific place, the claim could only arise at the place of sale. Since they sold grave sites only in Missouri, they argue that any claim against them must have arisen in Missouri. Monument Builders' claim, however, is not that the sale of each grave site injured it in a way in which a federal court can grant relief. Rather, its claim is founded upon the allegation that through an illegal agreement or conspiracy, the Kansas and Missouri cemeteries in the greater Kansas City area are adversely affecting consumer welfare by foreclosing competition in the market for grave marker sales and installation. Monument Builders' claim arises because it has allegedly been foreclosed from competing in that market and is therefore granted the power to sue, in a fashion similar to a private attorney general, under the federal antitrust statutes. The claim arises not from an individ-

ual cemetery's sale of graves, but from the alleged illegal conduct's adverse impact on consumer welfare within the relevant market. Because this market covers both Kansas and Missouri, the alleged antitrust violation occurs in both Kansas and Missouri.

We begin our inquiry into the appropriate venue for such a claim by briefly outlining the development and interpretation of the relevant venue statutes. Prior to 1966, the general venue provisions for federal question cases permitted a plaintiff to bring suit only in the district where the defendant resided. The venue provisions in the Clayton Act were "designed to aid plaintiffs by giving them a wider choice of venues, and thereby to secure a more effective, because more convenient, enforcement of antitrust prohibitions." *United States v. National City Lines, Inc.*, 334 U.S. 573, 586, 68 S.Ct. 1169, 1176, 92 L.Ed. 1584 (1948); *Wilshire Oil Co.*, 523 F.2d at 130 ("It is ... the purpose of 15 U.S.C. § 22 to liberalize rather than restrict venue in antitrust actions...."). This expansion of venue was not limitless. Congress took care not to grant antitrust

> "plaintiffs the power to bring suit and force trial in districts far removed from the places where the company was incorporated, had its headquarters, or carried on its business.... Congress was not willing to give plaintiffs free rein to haul defendants hither and yon at their caprice.... But neither was it willing to allow defendants to hamper or defeat effective enforcement by claiming immunity to suit in the districts where by a course of conduct they had violated the Act with the resulting outlawed consequences."

*National City Lines*, 334 U.S. at 588, 68 S.Ct. at 1176.

In 1966, Congress amended the general venue statute, expanding the available forums in all federal question cases. Unlike the special antitrust venue statute, which was designed to aid plaintiffs, this amendment was designed to make federal litigation more convenient for *all* parties. The Court explained the effect of the amendment as follows:

"There have been ... occasional gaps in the venue laws, *i.e.*, cases in which the federal courts have jurisdiction but there is no district in which venue is proper. One such gap arose in connection with cases involving multiple plaintiffs and defendants. Venue was fixed at the residence of the defendant.... When there were multiple ... defendants, the district of residence for venue purposes was the districts where ... *all* the defendants reside. If they resided in different districts then there was no proper venue. In 1966 Congress acted to close the gap with a provision authorizing suit where 'the claim arose,' which in most cases provides a proper venue even in multiple-party situations. The development supports the view that Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other. Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap."

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 1939 n. 8, 32 L.Ed.2d 428 (1972) (citations omitted).

In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Court addressed the limits of the 1966 venue expansion and held that it did not close all venue gaps. The Court stated that the plaintiff's desire to bring only one suit in a local forum was not necessarily sufficient to create venue under section 1391(b), 443 U.S. at 183, 99 S.Ct. at 2716, and that the limits of the expanded general venue statute were to be determined without reference to the convenience of the plaintiff, *see id.* at 185, 99 S.Ct. at 2717.

Nonetheless, the Court left open the possibility that unusual cases might exist in which a plaintiff would have a choice of venue because the claim arguably arises in more than one district.

"[I]n the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (*but* not of the plaintiff)—may be assigned as the locus of the claim."

*Id.* at 185, 99 S.Ct. at 2717. In one such case, the Fifth Circuit asserted that "[i]t is often impossible to isolate one judicial district as the district where the claims arose. Recent jurisprudence has recognized such difficulties, consistently holding that the exercise of determining the single district where the claim arose is sometimes unnecessary and unrealistic." *Checki v. Webb*, 785 F.2d 534, 537 (5th Cir.1986).

This is also such an unusual case. Applying the principles discussed above, we conclude that venue is proper in Kansas. Courts have recognized that venue may be "equally 'correct' in other judicial districts, while determining that venue was proper in their own districts." *Checki*, 785 F.2d at 538. Although venue would be appropriate against the Missouri defendants in a Missouri district court, we believe that venue is also appropriate in the district of Kansas, based on the factors set out in *Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717.

Thus, independent dealers and defendant cemeteries are both located in and, reading the complaint in the light most favorable to Monument Builders, attract customers from the Kansas City metropolitan area. This area happens to be divided by the Kansas/Missouri state line, but it nonetheless appears to be the relevant geographic market for the products and services at issue in this case.[6] The availability of witnesses and the accessibility of relevant evidence argue as plausibly for venue in Kansas as in Missouri. Indeed, at oral argument, counsel for the Missouri defen-

---

**6.** At this stage, we are not determining the relevant market for substantive antitrust law purposes. Monument Builders' allegation in its complaint that the greater Kansas City area is

the relevant geographic market should be presumed correct for venue purposes at this early stage in the proceedings, especially absent a contrary assertion by the Missouri defendants.

dants admitted that his clients would suffer virtually no hardship if required to proceed in Kansas. In addition, these defendants have never suggested that a Missouri district court (or any other for that matter) would be a superior forum in which to try this case. On the contrary, the Kansas defendants could have raised identical arguments had Monument Builders filed the case in Missouri. The thrust of defendants' argument is that the venue statute requires two separate suits in this situation. However, they are unable to articulate any reason why two identical, simultaneous suits should be required here, and their interpretation of the venue statute would leave a gap requiring duplicative litigation in at least two separate suits, a result Congress has clearly attempted to avoid. In sum, the claim can rationally be said to have arisen in Kansas as well as Missouri, and the factors the Court articulated in *Leroy* do not indicate that the statute should be interpreted to forbid venue in Kansas under the unique facts of this case.[7] We thus conclude that venue exists as to all defendants.

## III.

## DISMISSAL FOR FAILURE TO STATE A CLAIM

The district court found plaintiff's allegations of conspiracy and of market power to be insufficient. Both of these concepts are critical to all of plaintiff's claims. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a modern complaint is "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that

the claimant has a legal right to relief." *Perington Wholesale*, 631 F.2d at 1371. To dismiss under Rule 12(b)(6), "The trial court must conclude 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 1372 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). With the above standards in mind, we address in turn the sufficiency of the counts charged in the complaint.

### A. Conspiracy to Restrain Trade

■ In Count I, Monument Builders charges defendant cemeteries and cemetery associations with a horizontal conspiracy to restrain trade in violation of section 1 of the Sherman Act. We must determine whether the complaint makes sufficient allegations of conspiracy, and whether it alleges illegal practices under section 1.

> "The pleading standard set by Rule 8(a)(2) does not change from case to case.... However, while the pleading standard does not vary, what constitutes sufficient notice to enable a defendant to formulate a responsive pleading does change from case to case. To provide adequate notice, a complaint in a complex, multi-party suit may require more information than a simple, single party case."

*Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383, 1386–87 (10th Cir. 1980). In *Mountain View*, which defendants cite heavily, we dismissed portions of a multi-party antitrust conspiracy complaint as inadequate. The differences between the *Mountain View* complaint and that filed by Monument Builders are striking. The plaintiffs in *Mountain View* sued a large number of drug companies for unfair trade practices in relation to certain products. In none of their claims did the

---

**7.** If it later becomes apparent that persons residing in Kansas do not venture to Missouri to purchase cemetery plots, nor Missourians to Kansas, then the complexion of the suit would change. The court would then be faced with two distinct markets having different relevant characteristics. Completely different sets of evidence might be applicable to an evaluation of

Monument Builder's claims. If this indeed proves to be the case, it might be appropriate under section 1391(b) to allow this suit to proceed against only the Kansas defendants. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3827 at 275–76 (2d ed. 1986). At this early stage in the proceedings, we need not address this issue.

plaintiffs specify which defendants and products were involved with which practices. For example, the allegations of a tying arrangement did "not identify the offending defendants, the injured parties, the tied products, or the tying products." *Id.* at 1387. The allegations of price fixing similarly failed to specify which of the twenty-eight defendants fixed prices on which of the hundreds of products the defendants collectively manufactured. *Id.* at 1388.

The complaint in this case does not approach this level of imprecision. Monument Builders specifies the tied product, the tying product, and provides a lengthy list of allegedly anti-competitive practices defendant cemeteries agreed to put into effect. *See* Amended Complaint, rec., vol. VI, doc. 223, at 11–17. In this respect, the complaint is much more like the one we approved in *Perington Wholesale*, where we found it enough that "the conduct complained of ... [was] adequately specified, and the allegation of conspiracy related to that conduct." 631 F.2d at 1372.

Defendants protest that the allegations of conspiracy are conclusory in that the complaint fails to specify facts constituting direct evidence of an agreement connecting individual defendants, either directly or inferentially, to the implementation of the conspiracy. *See* Brief filed by Appellees American Cemetery Association, Mount Moriah Cemetery, and Chapel Hill Memorial Gardens at 17–20. However, "[w]hether the allegation is called conclusory, as it is, or factual, as it is also, is not determinative." *Perington Wholesale*, 631 F.2d at

1372. What is determinative is whether "[in] this case it cannot be said that defendants did not have fair notice of [Monument Builders'] claims, or that beyond doubt the plaintiff would be unable to prove the claim of conspiracy." *Id.*

■ Defendants' assertion that further specific facts are needed to make this complaint sufficient to state a claim is contrary to the substantive law of antitrust conspiracy as well as modern federal pleading standards. It is well accepted that conspiracy may be proven by circumstantial evidence. *See* 2 J. Von Kalinowski, *Antitrust Laws & Trade Regulation*, § 6.01[3][a][i] at 6–29 (1989). Although defendants are correct in pointing out that parallel behavior *alone* does not set out a claim of conspiracy, parallel behavior may support such a claim when augmented by "additional evidence from which an understanding among the parties may be inferred." *Id.* § 6.01[3][a][ii] at 6–36. Such evidence may include a showing that the parties "are acting against their own individual business interests, or that there is motivation to enter into an agreement requiring parallel behavior." *Id.* at 6–37.[8]

Although plaintiff has pleaded virtually no facts that would constitute direct evidence of an agreement, it has made sufficient circumstantial allegations to overcome the minimum requirements of Rule 8(a). In paragraphs 24 and 25 of the complaint, Monument Builders lists the prohibition against independent installation, as well as a number of surcharges assessed

**8.** Defendants cite with frequency to the Supreme Court's decisions in *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Both cases held that in the face of ambiguous circumstantial evidence of agreement, an antitrust plaintiff must come forward with "evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356 (quoting *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471). The Court did not intend to end reliance on circumstantial proof of conspiracy, but rather to avoid reliance exclusively on evidence which is "as consistent with permissible competition as with illegal conspiracy." *Matsushita*,

475 U.S. at 588, 106 S.Ct. at 1356; *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471. In their briefs, defendants offer no reasoning by which we could conclude that their alleged conduct was as consistent with legitimate business purposes as with collective effort to close independent dealers out of the market. More importantly, Monument Builders alleges that the practices have no other business purpose than to stifle competition from independent dealers.

Neither *Monsanto* nor *Matsushita*, which reached the Court after a full trial in one case and considerable discovery in the other, control fully at the pleading stage. Although the rules of those cases are ones antitrust plaintiffs must ultimately satisfy, we cannot conclude that Monument Builders can prove no set of facts which would support its claim of conspiracy.

by defendant cemeteries against customers of independent monument dealers, as practices that are allegedly intended to disadvantage such dealers. *See* rec., vol. VI, doc. 223, at 11–17. Plaintiff also alleges, *inter alia,* that defendant cemeteries enforce onerous installation rules regarding placement of monuments purchased from independent dealers which are markedly different from the rules applied to placement of their own monuments. Plaintiff alleges that these practices and the other alleged practices "bear no reasonable relation to the operation and maintenance of a cemetery." *Id.* at 17. Under these circumstances, we cannot say beyond doubt that plaintiff can prove no set of facts that would support the claim that defendant cemeteries entered into a "contract, combination or conspiracy" to engage in these practices.[9] We thus turn to whether the allegations listed, reviewed under the same standards, support a claim that the practices alleged constitute an illegal conspiracy in restraint of trade under section 1.

■ The trial court read the complaint as describing only a tying arrangement. A tying arrangement arises when a seller requires the purchaser of one product (the tying product) to also purchase another, distinct product (the tied product). "[C]ertain tying arrangements pose an unacceptable risk of stifling competition and therefore are unreasonable *'per se.'*" *Jefferson Parish Hosp. v. Hyde,* 466 U.S. 2, 9, 104 S.Ct. 1551, 1556, 80 L.Ed.2d 2 (1984). A tying arrangement is presumed illegal if it meets three criteria:

"First, purchases of the tying product must be conditioned upon purchases of a distinct tied product. Second, a seller must possess sufficient power in the tying market to compel acceptance of the tied product. Such power exists where market share is high, or where a seller offers a unique or otherwise desirable product which competitors cannot economically offer themselves. Finally, a tying arrangement must foreclose to competitors of the tied product a 'not insubstantial' volume of commerce."

*Fox Motors, Inc. v. Mazda Distrib. (Gulf) Inc.,* 806 F.2d 953, 957 (10th Cir.1986) (citations omitted). The risk posed by such arrangements is that the tied product will be purchased not on its competitive merits but because of its relationship to the tying product, thus depriving consumers of a competitive choice and unfairly disadvantaging competitors in the market for the tied product. *See Jefferson Parish Hosp.,* 466 U.S. at 12, 104 S.Ct. at 1558. The trial court held that Monument Builders failed to allege sufficient market power to support a claim that cemeteries could force purchasers of plots to buy markers also. The court based its conclusion on the complaint's failure to specify the market shares of individual cemeteries, and on the dilution of the alleged collective 70–75% market share by the dismissal of the twelve Missouri defendants.

Market power, for purposes of supporting a claim of forcing, is proven "[w]hen the seller's share of the market is high, or when the seller offers a unique product that competitors are not able to offer." *Jefferson Parish Hosp.,* 466 U.S. at 17, 104 S.Ct. at 1561 (citation omitted). Monument Builders alleges in its complaint both that

---

**9.** The Eighth Circuit recently reviewed dismissal of a complaint apparently almost identical to the one here, and found the allegations of conspiracy sufficient:

"The complaint in this case alleges that the appellee cemeteries agreed to engage in tying arrangements in order to force cemetery lot customers to buy their memorials and installation services from the appellee cemeteries. The nature of the tying devices used is set forth in detail, ranging from rules flatly requiring the lot customer to deal only with the cemetery, to a variety of rules allegedly designed to erect barriers to independent memorial retailers and installers. The appellee

trade associations are alleged to have participated in the conspiracy by recommending the restrictive rules complained of. Baxley–DeLamar has alleged (albeit minimally) 'facts constituting the conspiracy, its object and accomplishment'. *Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 273 (5th Cir. 1979). Therefore, Baxley–DeLamar satisfied the minimal pleading requirements of Rule 8. *See Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d. 1383, 1386–88 (10th Cir. 1980)."

*Baxley–DeLamar Monuments, Inc. v. American Cemetery Ass'n,* 843 F.2d 1154, 1156 (8th Cir. 1988).

defendants' share of the market was high and that the uniqueness of specific plots along with the "defendant cemeteries' special relationship with purchasers of such spaces," give the cemeteries sufficient power in the market for plots to restrain competition in the market for markers. Rec., vol. VI, doc. 223, at 11. Monument Builders also alleges that the effect of the defendants' actions has been to curtail competition in the market for markers, to deprive consumers of a competitive choice of markers, and to cause buyers to pay higher prices for markers. *Id.* at 12.

The Eighth Circuit recently held allegations identical to these sufficient to state a tying claim under section 1. *See Baxley–DeLamar Monuments v. American Cemetery Ass'n,* 843 F.2d 1154, 1157 (8th Cir. 1988). The Eighth and Ninth Circuits have found proof of similar allegations to support a tying claim.[10] *See Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n,* 666 F.2d 1130, 1140–46 (8th Cir.

1981), *cert. denied,* 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982); *Moore v. Jas. H. Matthews & Co.,* 550 F.2d 1207, 1213–18 (9th Cir.1977). We therefore cannot say beyond doubt that Monument Builders can prove no set of facts supporting a claim that defendants engaged in a per se illegal tying arrangement.[11]

■ In Count II, Monument Builders describes no new anti-competitive activities, but claims that defendant cemetery associations (Kansas, Missouri, and American) and the Jas. H. Matthews Company encouraged, advised, and coordinated the cemeteries in the formulation and implementation of the practices described in Count I, all in violation of Sherman Act section 1. In addition to making conclusory allegations regarding Matthews' actions, Monument Builders also alleges that Matthews formulated many of the allegedly anti-competitive practices described in Count I. *See* rec., vol. VI, doc. 223, at 22–23. Although

---

**10.** Our holding is also supported by the Supreme Court's decision in *Norfolk Monument Co. v. Woodlawn Memorial Gardens,* 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969). The Court reversed the grant of summary judgment to the defendants in a case similar to this one, based on the following conduct:

"'(1) Despite the unskilled nature of the work, all of the memorial parks refuse to permit the plaintiff to install markers sold by it; all of them insist that the work be done by the cemeteries themselves.

"'(2) None of the memorial parks charges lot owners a separate installation fee in the case of markers purchased from the cemeteries.

"'(3) All of the memorial parks require the payment of an installation fee by the plaintiff for installing markers purchased from the plaintiff. The plaintiff plausibly maintains that the actual cost of installation comes to about $3. Yet, enormous installation fees are charged plaintiff * * *.

"'(4) All of the memorial parks require a specific alloy content in the bronze markers installed, and reserve the right to reject nonconforming markers. The alloy content requirement happens to be the same as manufacturer Matthews' markers and the same as is implicitly suggested in a pamphlet ("Modern Cemeteries") distributed by Matthews to its customers. All of the memorial parks except Roosevelt are customers of Matthews.

"'(5) There is evidence that Greenlawn, Woodlawn and Princess Anne have attempted to dissuade lot owners from purchasing mark-

ers from the plaintiff. The affidavit of plaintiff's president states that numerous other incidents of this nature have occurred.

"'(6) Defendant Matthews, in its pamphlet "Modern Cemeteries," suggests a number of practices which in effect erect competitive barriers to retailers other than the cemeteries themselves.

"'(7) Many of these practices have been adopted by the memorial park defendants, as evidenced by affidavits in the record, and by the "rule books" of Rosewood, Princess Anne and Greenlawn.

"'(8) There is evidence of numerous visits to and conferences with the memorial parks by sales representatives of Matthews.'"

*Id.* at 701–02, 89 S.Ct. at 1392–93 (quoting *Norfolk Monument Co. v. Woodlawn Memorial Gardens,* 404 F.2d 1008, 1012–14 (4th Cir.1968) (Craven, J., dissenting)). Allegations of conduct identical or similar to that set out in all but paragraphs 5 and 8 are found in Monument Builders' complaint.

**11.** The trial court failed to address whether, even if plaintiff's claims do not amount to a per se illegal tying arrangement, defendants do in fact unreasonably restrain trade, thus violating section 1 under the rule of reason. Monument Builders may prevail if it can satisfy this more fact-bound test. *See Jefferson Parish Hosp. v. Hyde,* 466 U.S. 2, 29, 104 S.Ct. 1551, 1567, 80 L.Ed.2d 2 (1984). The trial court should address this issue on remand should it become necessary.

this portion of the complaint is unquestionably not drawn in the most artful manner, it does give adequate notice to Matthews and the cemetery associations of the role each is charged with playing in the conspiracy. *See Baxley–DeLamar Monuments,* 843 F.2d at 1156. We therefore conclude that the district court erred in dismissing this count under Rule 12(b)(6).

### B. Sherman Act Section 2 Conspiracy to Monopolize

■ The district court dismissed Count III, which alleges a violation of section 2 of the Sherman Act, because Monument Builders failed to make sufficient allegations of either market power or conspiracy. The court noted that while Monument Builders alleges that defendant cemeteries controlled 70–75% of the interment market, it makes no allegations regarding the monument market. Although Monument Builders alleges that Matthews controlled a significant portion of the national market in bronze markers, the court pointed out that "nowhere does plaintiff allege that any of the defendants, including Jas. H. Matthews Company, hold market strength over granite markers." *Monument Builders,* 629 F.Supp. at 1010.

Monument Builders styled Count III as "conspiracy and/or attempt" to monopolize. "However, it appears that [plaintiff] actually pleaded a conspiracy to monopolize, rather than a number of individual attempts to monopolize." *Baxley–DeLamar Monuments,* 843 F.2d at 1157 (assessing virtually identical complaint). The district court was correct in noting that no individual is alleged to have attempted, on its own, to monopolize the relevant market. Nonetheless, we conclude that the complaint does state a claim for conspiracy to monopolize.

"Conspiring to monopolize is a separate offense under section 2, requiring less in the way of proof than the other section 2 offenses." *Perington Wholesale,* 631 F.2d at 1377. For example, the "market power in a 'relevant market' need not be proved." *Id.* A plaintiff must show conspiracy, specific intent to monopolize, and overt acts in

furtherance of the conspiracy. *See id.; Baxley–DeLamar Monuments,* 843 F.2d at 1157. As we have outlined above, Monument Builders makes sufficient allegations of conspiracy and overt acts committed pursuant thereto. It also alleges that defendants intended to monopolize the Kansas City market for grave markers. *See* rec., vol. VI, doc. 223, at 24. We therefore hold that the district court erred in dismissing this count under Rule 12(b)(6).

### IV.

### SANCTIONS

The district court awarded various defendants attorneys fees for four reasons. First, it concluded that the amended complaint does not support a cause of action, and that plaintiff did not sufficiently investigate the facts prior to filing the lawsuit. The court believed these deficiencies were exacerbated by Monument Builders' failure to improve its complaint when it was given an opportunity to amend. Second, the court found no justification for suing the Missouri defendants in the district of Kansas. Third, the court found that an antitrust damages action against the City of Olathe was untenable in light of the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34–36. Fourth, the court imposed attorney's fees in favor of D.W. Newcomer's Sons because Monument Builders alleged that Newcomer's owned and operated three Missouri cemeteries, when in fact it owned the stock of property companies that in turn owned the cemeteries.

■ Rule 11 mandates sanctions against attorneys and/or their clients when pleadings, motions, or other signed papers in the district court are not well grounded in fact, are not warranted by existing law or a good faith argument for its extension, or are filed for an improper purpose. Fed. R.Civ.P. 11. We will overturn an award of sanctions under Rule 11 only if it constitutes an abuse of discretion. *See Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988); *Burkhart v. Kinsley Bank,* 852 F.2d 512, 515 (10th Cir.1988). Rule 11 im-

poses an obligation on the signer of a pleading to conduct a reasonable inquiry into whether the pleading is legally frivolous or factually unsupported. *See Medical Emergency Serv. Assoc. v. Foulke,* 844 F.2d 391, 399–400 (7th Cir.1988); *Unioil, Inc. v. E.F. Hutton & Co.,* 809 F.2d 548, 557 (9th Cir.1986), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 85, 98 L.Ed.2d 45 (1987).

 Because of our holdings on the merits, sanctions based on improper venue and insufficiency of the complaint must be reversed.[12] The district court did not abuse its discretion, however, by finding that Monument Builders and its attorney could have discovered, after reasonable inquiry, that Newcomer's did not directly operate the cemeteries it allegedly operated. Accordingly, the sanction based on that ground is affirmed. Monument Builders has not appealed the award of sanctions to the City of Olathe.[13]

### V.

### CONCLUSION

The trial court's dismissal of this action for improper venue and for failure to state a claim is reversed. The awards of attorneys fees based on improper venue and the inadequacy of the complaint are also reversed. The award of attorneys fees in favor of D.W. Newcomer's Sons is affirmed. The case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

12. The district court ordered sanctions when it dismissed the complaint, but it did not set the amount of the sanctions until after the notice of appeal was filed. Defendants argue that because plaintiff's notice of appeal was filed before the trial court's final determination on sanctions, this court does not have jurisdiction over the issue. The notice of appeal was filed before this court's decision in *Phelps v. Washburn Univ.,* 807 F.2d 153 (10th Cir.1986). Therefore, the rule announced in that case does not apply and we may exercise jurisdiction over the trial court's award of sanctions. *See Thomas v. Metroflight, Inc.,* 814 F.2d 1506, 1512 (10th Cir.1987).

13. On appeal, Monument Builders concedes that it is not entitled to antitrust damages against the City of Olathe, but challenges the dismissal of its claim for injunctive relief against that defendant. The City of Olathe has filed a motion for sanctions on appeal under Fed.R.App.P. 38, alleging that the appeal against it is frivolous. To the contrary, Monument Builders' argument with respect to the dismissal of its claim for injunctive relief, far from being frivolous, has prevailed on appeal. Accordingly, the motion for sanctions on appeal is denied.